Petesch vs. Hambach and another.

PETESCH vs. HAMBACH and another.

*January 7 — February 24, 1880.*

REFORMATION OF MORTGAGE *executed by husband and wife, so as to make it include the homestead, omitted by mistake.*

1. A written instrument will be reformed, for fraud or mistake, only so as to give effect to a previous binding contract of the parties; though *it seems* that this rule is not inconsistent with such reformation of an instrument where the executory agreement was oral and within the *statute of frauds.*

2. Where a mortgage of land of a married man, executed by him and his wife, and taken by the mortgagee as security for moneys loaned to the husband, with the understanding and belief of all parties that it was a mortgage of the homestead, was found to be of other lands only: *Held*, that the instrument cannot be reformed as against the wife, after the husband's death (where the homestead had descended or been devised to her); nor would it have been reformed even as against the husband in his lifetime, since, by the statute, it would have been void without the wife's signature.

COLE and TAYLOR, JJ., dissented. RYAN, C. J., was absent.

APPEAL from the Circuit Court for *Sheboygan* County.

The action is to reform a mortgage. The facts found by the circuit court, so far as it is necessary to state them, are as follows:

In .1875, one Peter Petesch was the owner of lots A and B in a certain block in the village of Random Lake. Lot A was his homestead, on which he and his wife resided. Peter obtained a loan of $800 of the plaintiff, under an agreement to secure the repayment of the same, and the interest, by a mortgage on lot A. A mortgage was accordingly drawn and executed by Peter and his wife, all parties supposing it to be upon the homestead lot. It was afterwards discovered that it was upon lot B instead of lot A — so drawn by mistake. Lot B is of small value, is inadequate security for the mortgage debt, and the parties did not intend to include it in the mortgage. Peter died in 1876, and the homestead descended to his widow as his only heir-at-law, or it was devised to her. In 1877, the widow married *Jacob Hambach*, and soon thereafter conveyed the homestead to him through an intermediate party. The conveyance was not made upon a valuable consideration. This action was brought against *Jacob Hambach and his wife* (late Mrs. Petesch) to correct the mortgage and constitute it a lien upon lot A. The circuit court denied the relief prayed, and gave judgment dismissing the complaint, with costs. The plaintiff appealed from the judgment.

The cause was submitted on the brief of *W. H. Seaman* for the appellant, and that of *Frisby, Weil & Barney* for the respondent.

For the appellant it was argued, 1. That the defendant *Margaret Petesch Hambach* became possessed of the premises as ·heir or devisee of her deceased husband. Her rights as widow merged in the greater estate thus acquired; and as such heir or devisee she can maintain no defense not permitted to her devisor. Asserting the benefits of full ownership, she must be charged with its burdens, and cannot be permit-

ted in a court of equity to enjoy the fruits of the bequest and at the same time to employ her former inconsistent position as a means of wronging the plaintiff. *Norton v. Nichols*, 35 Mich., 148. 2. That, conceding to *Mrs. Hambach* the same *status* which she occupied prior to taking under the devise, the relief sought may still be had. There is not here an entire want of a mortgage, as in some cases cited by respondent, where there was a failure in some of the statutory requirements necessary to validity. The mortgage is in every respect valid, but it does not represent what the parties intended. Appellant asks that it may be made to speak the truth. All that is required is a decree of court declaring the intention — the truth of the instrument; and the mortgage then stands as the original act of the parties. While equity may not supply the non-execution of an instrument, it will aid a defective execution. The cases of *Shroyer v. Nickell*, 55 Mo., 264, and *Martin v. Hargardine*, 46 Ill., 322, have extended the rule against reformation to cases which are clearly beyond its reason and application; and relief can well be granted here without violation of any settled doctrine and entirely in accordance with the rules and disposition of equity jurisprudence. *Hamar v. Medsker*, 7 Cent. L. J., 77. It is immaterial that the premises constitute a homestead; for, as decreed, the mortgage would be the same which *Mrs. Hambach* did execute *in animo*. 3. That the provisions of our statutes and decisions of this court seem ample to give a married woman a status among contracting parties. *Heath v. Van Cott*, 9 Wis., 516; R. S., sec. 2222.

For the respondents it was argued, among other things, 1. That the evidence is not so clear and convincing as to warrant a reformation under the rule adopted by this court. *McClellan v. Sanford*, 26 Wis., 595; *Newton v. Holly*, 6 id., 592; *Lake v. Meacham*, 13 id., 355; *Fowler v. Adams*, id., 458. As the principal party to the transaction, Peter Petesch, is dead, much stronger testimony should be required

than if he were living. 2. That this action is in the nature of one for a specific performance of the original contract between plaintiff and the deceased. *Martin v. Dwelly*, 6 Wend., 9; *Hait v. Houle*, 19 Wis., 472; *Dickinson v. Glenney*, 27 Conn., 104. That being the case, defendant's status is not changed by the married woman's act, but, as respects her husband's property, she stands as at common law. *Heath v. Van Cott*, 9 Wis., 516; *Erwin v. Downs*, 15 N. Y., 575; *Yale v. Dederer*, 18 id., 265; Kerr on F. & M., 149, 150; Tyler on Inf. and Cov., 315; *Rogers v. Weil*, 12 Wis., 664; *Conway v. Smith*, 13 id., 125; *Todd v. Lee*, 15 id., 365. Hence the parol contract was void as to her, and equity will not reform thereby. *Carr v. Williams*, 10 Ohio, 305; *Purcell v. Goshorn*, 17 id., 105; *Davenport v. Sovil's Heirs*, 6 Ohio St., 459; *Miller v. Hine*, 13 id., 565; *Martin v. Hargardine*, 46 Ill., 322; *Shroyer v. Nickell*, 55 Mo., 264; 7 Cent. L. J., 182; *Grapengether v. Fejervary*, 9 Iowa, 163, 173. The statute makes, not the assent of the wife, but her signature to a conveyance of the homestead, necessary to its validity. When the husband, by the instrument, fails to alienate, a court of equity cannot do for him what he had not done, and carry the wife's signature from an imperfect or void deed to a perfect one. In Ohio the legislature have authorized the courts to do, in this respect, what they otherwise had no power to do; but until our legislature shall confer a like power upon the courts of this state, they cannot exercise it. 3. The mortgage cannot be reformed as to the husband so as to be effectual as a mortgage of the homestead, unless it be also reformed as to the wife, her signature being absolutely essential to a conveyance of any interest or estate whatever in the homestead.

LYON, J. An essential condition upon which a court of equity will reform a written instrument is, that the parties thereto have made a binding contract, which they mutually agreed to incorporate in the instrument, but which, through

fraud or mistake, they failed to do. The original contract must be valid, or no reformation of the instrument will be decreed, however clearly the mistake be established. It was said by Lord HARDWICKE, in *Henkle v. The Royal Ex. Assurance Company*, 1 Ves. Sen., 317, that if the contract relates to an illicit subject, the relief will not be granted. In *Eaton v. Eaton*, 15 Wis., 259, this court refused to reform a voluntary deed by compelling the grantors to affix a seal. Mr. Justice PAINE, delivering the opinion of the court, said: "It is well settled that equity will not interfere to enforce a voluntary contract to convey. *Smith v. Wood*, 12 Wis., 382. *A defective attempt to make a voluntary conveyance stands upon the same ground.*"

In the opinion by DIXON, C. J., in *Hanson v. Michelson*, 19 Wis., 498, it is said: "It is a familiar rule that a defective deed may be treated in equity as an agreement to convey, and performance enforced; and where it is, we think, as was held in *Eaton v. Eaton*, that it stands on the same footing as an executory contract to convey, and that it will not be carried into effect by a court of equity if it appears to have been made without consideration." In the late case of *Sherwood v. Sherwood*, 45 Wis., 357, the power of the court to correct a mistake in a will was denied. One of the grounds of the judgment is thus stated: "The reason why courts of equity will not interfere in such cases seems to be, that an action to reform a written instrument is in the nature of an action for specific performance, and the making of a will being a voluntary act there is no consideration, as in actions to reform deeds or contracts, to support the action. Hence it is said in a note by the editor of Wigram's Treatise on Extrinsic Evidence in Aid of Wills, that 'volunteers under wills have no equity whereon to found a suit for specific performance.'" In *Hunt v. Rousmaniere's Adm'rs*, 1 Pet., 1, it is said that "the execution of agreements fairly and legally entered into is one of the peculiar branches of equity jurisdiction; and if

the instrument which is intended to execute the agreement be from any cause insufficient for that purpose, the agreement remains as much unexecuted as if one of the parties had refused altogether to comply with his engagement; and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as the other, by compelling the delinquent party to perform his agreement according to the terms of it, and to the manifest intention of the parties." (page 13.)

The above citations, which might be increased almost indefinitely, are sufficient to show that an action to reform a written instrument is in the nature of an action for specific performance, and relief is granted therein on the same principles. Also that an instrument not founded upon sufficient consideration — that is, a mere voluntary instrument — will not be reformed; neither will an instrument be reformed to express a contract which originally was *nudum pactum*. Indeed, the authorities on this subject, both in this country and in England, all seem to be one way.

There has been some conflict of decision in the application of the principles above stated to cases where the contract omitted from, but sought to be embodied in, the reformed instrument, was, while resting in parol, void by the statute of frauds. Such a case would arise, if, from a conveyance executed in attempted compliance with a parol contract for the sale and purchase of land, the land intended, or some part thereof, should be omitted by mistake.

In Massachusetts and Maine, and perhaps in some other states, it has been held that the conveyance cannot be reformed unless there is a valid, to wit, a written, executory contract of sale to reform by. *Glass v. Hulbert*, 102 Mass., 24; *Elder v. Elder*, 10 Me., 80. To the same effect are the cases of *Osborn v. Phelps*, 19 Conn., 63, and *Best v. Stow*, 2 Sandf. Ch., 298. Some of these cases concede the right of the defendant resisting specific performance to show by parol that

the instrument sought to be enforced does not correctly express the agreement of the parties, but deny the same right to a plaintiff seeking reformation of an instrument.

It is said by Professor Pomeroy, in his late treatise on the specific performance of contracts, that the preponderance of judicial authority in this country supports the opposite doctrine, to wit, that the statute of frauds is no impediment to the reformation of a conveyance; and in his notes to section 204, he cites numerous cases in support of that proposition. But the learned author states (no doubt correctly) the ground upon which these decisions rest. He says: " The statute of frauds is no real obstacle in the way of administering equitable remedies, so as to promote justice and prevent wrong. Equity does not deny or overrule the statute; but it declares that fraud — and the same is true of mistake — creates obligation and confers remedial rights which are not within the statutory prohibition — in respect to them the statute is uplifted." Section 266, page 350.

This is but another mode of saying that, notwithstanding the statute of frauds, there is in such a case a valid and binding executory contract, which the parties intended and attempted to embody in the instrument sought to be reformed, but failed to do so. Hence the cases which uphold the reformation of written instruments in proper cases, without regard to the statute of frauds, are in entire harmony with the rule above stated that there must be a valid binding contract to reform by, or reformation will not be decreed.

In general, by the principles of the common law, a *feme covert* can do no act to bind herself; she is said to be *sub potestate viri*, and subject to his will and control. Her acts are not, like those of infants and some other disabled persons, voidable only, but are, in general, absolutely void *ab initio*. *Elliott v. Peirsol*, 1 Peters, 338. Because of her disability to contract, it has uniformly been held that if a wife join her husband in the execution of a defective conveyance, such con-

veyance cannot be reformed as to her, unless by virtue of an express statute. The cases to this effect will be found cited in the argument of counsel for the defendants.

*Hamar v. Medsker*, 60 Ind., 413, is relied upon by counsel for appellant to sustain this action. In that case a married woman owned land in her own right, sold it, and received the purchase money therefor. She executed a conveyance to the purchaser, in which her husband joined, but by mistake the land actually sold was not described therein. A statute of that state is as follows: "No lands of any married woman shall be liable for the debts of her husband; but such lands and the profits therefrom shall be her separate property, as fully as if she was unmarried; *provided*, that such wife shall have no power to encumber or convey such lands, except by deed, in which her husband shall join."

The action was to reform the deed so that it should convey the land actually sold, and it was so reformed. There was no argument by counsel against the power of the court to correct a mistake in the deed of a married woman. The opinion asserts that " the lands of a married woman can be conveyed or encumbered in no other mode than that prescribed by the statute; and her agreements in relation thereto, not executed in the manner prescribed by the statute, are void;" but says that by the correction of the deed the object and policy of the statute are not contravened or thwarted, because the husband joined in the defective deed. The decision stands alone, and the reasoning upon which it is rested is not sufficiently strong and convincing to justify us in accepting the adjudication as authority. We should be better satisfied with it had the court applied another principle of equitable jurisdiction, and de-creed that, because the land sold was the separate estate of the wife, and because she had received the purchase money there-for, the purchaser should have a lien upon the land purchased for the amount he paid on account of the purchase.

An article in 7 Cent. L. J., 182, reviews this Indiana case,

and points out with clearness and force the fallacy of the argument upon which the decision is rested, and the unsoundness of the decision. This article also cites many cases on the general question, which it has not been thought necessary to cite in this opinion. Other articles on the subject are contained in the same periodical in vol. 7, p. 434, and vol. 8, p. 42, maintaining, with considerable ingenuity of argument, the doctrine of the Indiana case. But we think the writers have signally failed to give any sufficient reason for destroying the old and well established landmarks of the law in this behalf.

If the land which it is claimed should be included in the mortgage sought to be reformed in this action, was the separate estate of the wife, and especially if she had received to her own use the money which it was given to secure, in view of our statute, which removes the disability of coverture and enables the wife to contract in respect to her separate estate the same as though she were sole, it may be that the mortgage might be reformed as against her. However, this is not here decided. Again, had not such land been a homestead, no doubt the mortgage should be reformed as to the interest therein of the husband, but not to affect the dower right of the wife.

But the land affected by the action being a homestead, the husband was under legal disability to mortgage it without the signature of the wife to the mortgage. Without her signature a mortgage executed by him is invalid. Hence, a reformation of the mortgage as to him, or his heir, or the devisee of the land, without reforming it at the same time as against the wife, would be wholly inoperative for any purpose.

The homestead in controversy belonged to the husband. The wife had no *estate* in it by virtue of the homestead right. She had only an absolute veto upon the power of her husband to alienate it, which the statute executes for her until she sees fit to affix her signature to her husband's conveyance of it. *Godfrey v. Thornton*, 46 Wis., 677. Our statute only removes

the disability of coverture in respect to the separate estate of the wife. This homestead not being the separate estate of the wife, it is clear that she was under the common-law disabilities of coverture when she signed the defective mortgage. Being so, she could only validate her husband's mortgage of the homestead by signing it. She has signed no such mortgage, and could not make a valid executory agreement to do so. Hence, there is no ground upon which a judgment to reform the mortgage can legally be rendered.

The death of Peter Petesch, and the fact that the homestead descended or was devised to his widow, are not important; neither is her subsequent marriage with the defendant *Jacob Hambach*, or the conveyance of the homestead to him. The case stands precisely as it would have stood had the action been brought in the life-time of Peter, against the mortgagors, and must be determined on the same principles.

We have studied attentively the very able argument of the learned counsel for the plaintiffs, and the authorities which he cites. We agree with him that on principles of natural equity the plaintiff ought to have relief, and should be better satisfied could we award it to him; but we are denied that satisfaction by inexorable rules of law, which we may not disregard. We must affirm the judgment of the circuit court.

ORTON, J., concurred.
COLE and TAYLOR, JJ., dissented.
RYAN, C. J., was not present.

COLE, J. I am constrained to dissent from the decision in this case. It is said that an action to reform an instrument for a mistake is in the nature of a suit for specific performance of a contract, and that no performance will be enforced against a married woman because her contracts are void. Whatever reason there may have been in this rule formerly, I think it fails upon the facts of this case, in view of the legislation of this state. The common-law disabilities of married

women, so far as their separate estate is concerned, is entirely removed by statute. She may make contracts relating to such estate in the same manner and to the same extent as though she were sole, and subject herself to all legal and equitable remedies on such contract. As early as *Conway v. Smith*, decided nearly twenty years ago, it was held that a married woman was liable in an action at law on a note executed by herself and husband, to pay for improvements on her separate estate; and the doctrine of that case has been repeatedly affirmed since. Indeed, at the present term we have decided that a married woman, having no separate estate, may purchase upon credit a farm, carry it on, and have the benefit of the crops, thus acquiring a separate estate. *Dayton v. Walsh.* See, also, *Meyers v. Rahte*, 46 Wis., 655. Thus, in respect to her own property, a married woman has precisely the same legal capacity to make contracts as a single woman.

I refer to this legislation for the purpose of observing that decisions in actions for the specific enforcement or reformation of contracts executed by husband and wife, where the common-law disabilities of coverture exist, are to be applied with much caution to their contracts made in this state. The property intended to be mortgaged in this case was the homestead of the husband. By our statute, a mortgage or other alienation by a married man of his homestead is not valid without the signature of the wife to the same. In *Godfrey v. Thornton*, 46 Wis., 677, it was held that this statute did not vest any estate in the wife, living the husband, in the homestead, but operated only as a disability of the husband, living the wife, to alienate his homestead, without her consent, evidenced by her signature to his alienation. In this case, the wife did consent to the husband's mortgaging his homestead. She evidenced that consent by signing and acknowledging the mortgage, which, as the court below found, was intended by all parties to include the homestead.

Why, then, should not the mortgage be reformed so as to

correct the mistake in the description, and make it express the real contract of the parties? It is said that this cannot be done, because the wife, *quoad* the homestead, stands where she did at common law, subject to the same disabilities. But if this is so, what is the object of the statute making the alienation of the homestead by the husband valid, with her consent evidenced in writing? Is there no efficacy in that statute; no power to contract conferred by it upon the wife? Certainly, it makes the written assent of the wife essential to the validity of the husband's alienation; it is potent to change to that extent, at least, the common-law *status* of the wife. Upon the facts, I can see no objection whatever to correcting the description of the property so as to make the mortgage include the premises which all parties intended and supposed it did include when executed. On the decease of the husband, the wife became possessed of the property as heir-at-law. After being so possessed, she recognized the validity of the mortgage by taking out a policy of insurance on the premises, making the loss payable to the mortgagee. If she really had no power whatever to make a contract in the first instance, these circumstances might not increase the equities of the mortgagee; but as it is, they tend to show the contract the parties intended to make. The intent being clearly proven, the wife having consented to the husband's mortgaging his homestead, the mortgage should be corrected to express the contract of the parties.

In *Schmitz v. Schmitz*, 19 Wis., 207, an action was brought to correct a mistake in the description of a mortgage executed by a husband and wife on the homestead. The mistake was corrected in the court below so as to carry out the intention of the parties to the instrument. On appeal to this court, the point was made that the mortgage could not be corrected or reformed, because it was executed by a married woman. But the court did not have occasion to pass upon the question, as it held that the evidence in the case clearly identified the

premises embraced in the mortgage as being the same before as after the correction, so that the defendants could not have been injured by the correction. In *Smith v. Armstrong*, 24 Wis., 446, husband and wife contracted as vendors of land, and a specific performance of the contract was enforced in favor of the vendee. True, there was no question made as to the power of a married woman to make the contract; it seems to have been assumed that she had such power, and that a court of equity would enforce her contract in that behalf. Other cases of like effect may be found in our reports, where the question as to the validity of a contract of a married woman does not seem to have been raised. These cases only have a negative value, perhaps. But my intention was not to discuss the question at length, but only state some of the reasons why I dissented from the decision.

On an equal division of the justices present and acting in the determination of the appeal, the judgment below was affirmed.