ROWELL, Appellant, vs. SMITH, Administrator, Respondent.

*December 13, 1904—January 10, 1905.*

Res adjudicata: *Judgments: Conclusiveness: Parties: Privies: Cause of action: Statute of frauds: Specific performance: Election of remedies: Estoppel* in pais: *Waiver: Laches: Mutual mistake: Collateral promises.*

1. A judgment is conclusive between the parties thereto and their privies in a second action on the same claim or cause of action, as to all questions that were, or might have been, litigated in the first action, and is likewise conclusive in a second action upon a different claim or cause of action, as to every proposition within the issues at first, which was presented for adjudication and decided.   In this rule the mere personal effect is confined to the parties, while the term "privity" suggests mutual succession or relation to the same property or property right. *Hart v. Moulton,* 104 Wis. 354.

2. Where a person not a party to an action will be liable to another who is a party if the latter's claim or defense shall fail, and such person has notice of the action and opportunity to participate therein in defense or maintenance of his position, he will be bound by the result the same as if he were a party to such action.

3. A cause of action to enforce a supposed valid agreement to answer for the debt, default or miscarriage of another is different from one based on the circumstance resulting in the supposed valid agreement to compel specific performance of a verbal agreement to make a valid guaranty or to reform one defectively written so as to make the same accord with the intention of the parties.

4. The doctrine of election of remedies applies only where there

are two or more appropriate ways to vindicate the right of a controversy, but the relations between the parties necessary to the pursuit of one successfully, are such that concurrent existence of those necessary to the pursuit of the other or others is impossible.

5. Unsuccessful use of a remedy, supposed to be, but in effect not, appropriate to vindicate the right of a particular matter, either because the facts turn out to be different than plaintiff supposed them to be, or the law applicable to the facts is found to be different than supposed, though the first action proceeds to judgment, does not preclude plaintiff from thereafter invoking the proper remedy.

6. Neither the doctrine of election nor *res adjudicata* applies to the situation suggested in the preceding paragraph, though if the second remedy invoked is in equity and the defendant would be seriously prejudiced by plaintiff's mistake if he were permitted to proceed the second time, the court might apply principles of estoppel *in pais* if deemed necessary to prevent injustice.

7. Where more than one remedy to deal with a single subject of action exists and they are inconsistent with each other, after the choice of one with knowledge, or reasonable means of knowledge, of the facts, the other no longer exists.

8. Where more than one remedy to deal with a single subject of action exists and they are not inconsistent all may be used concurrently, but a satisfaction in one is a satisfaction in all.

9. Where only one remedy exists to deal with a single subject-matter, but through mistake one not appropriate is invoked, the proper remedy is not thereby waived.

10. Mere delay for any length of time, short of a period sufficient to extinguish the right under the statute of limitations, does not bar an action in equity to vindicate such right.

11. Mutual mistake, either of fact in making a contract or of law or fact in reducing the same to writing, is remediable, in the absence of a waiver of the right in that regard or estoppel to the assertion of it.

12. A verbal agreement to make a collateral promise can no more be dealt with in equity to save the collateral promisee from the consequences of noncompliance with the statute of frauds, than a written agreement in that regard, which is fatally defective for noncompliance with such statute.

13. A court of equity will not take jurisdiction to compel specific performance of a verbal agreement to make a valid contract of guaranty where it would not reform such a contract, through mutual mistake defectively reduced to writing.

14. A mere collateral promise to answer for the debt, default or miscarriage of another, invalid because not reduced to writing, or because defectively so reduced, is not susceptible of part performance as between the principal contracting parties so as to afford the collateral promisee a right of action in equity to compel the making of a valid guaranty in writing, to reform the one defectively made.

15. The doctrine that in case a contract, required to be made in a particular way to be valid under the statute of frauds, is not so made, a court of equity will deem the statute "uplifted" and enforce the obligation growing out of the circumstances of the situation so as to prevent the consequences that would otherwise flow from such statute, where, if that were not done, it would be used as an instrument of fraud instead of one to prevent fraud, does not apply, if the effect would be to essentially nullify the statute.

16. In applying the maxim "There is no wrong without a remedy" courts of law and equity as well must regard wrong, so called, which is not remediable because of the statute on the subject, as not wrong at all in a judicial sense.

17. The doctrine as to part performance taking a transaction out of the statute of frauds so that the relations between the parties may be dealt with judicially to prevent injustice, is grounded on the idea that the opposite party by the statute and such part performance has obtained title to something of value for which, independently of the statute, he should render an equivalent.

18. The doctrine mentioned in the last paragraph cannot apply as between the parties to a mere collateral promise which is within the statute of frauds, because as to such neither part nor full performance by the collateral promisee enriches the collateral promisor.

[Syllabus by Marshall, J.]

Appeal from a judgment of the circuit court for Portage county: Chas. M. Webb, Circuit Judge. *Affirmed.*

Action for equitable relief. Plaintiff sold one Goodrick 470 shares of the capital stock of the Valley Iron Works Manufacturing Company, and A. L. Smith, since deceased, 170 shares of such stock under an agreement that the purchase price to the former amounting to $5,000, should be paid in accordance with five $1,000 notes due in two, three,

four, five and six years, the first three thereof to be guarantied by said Smith. Pursuant to the verbal agreement in that regard plaintiff delivered the stock, Goodrick signed the five notes and Smith placed on the back of the first three to fall due the words:

"I hereby guarantee the payment of the within note.

                                    "A. L. SMITH."

omitting by mistake, as is alleged, the words "for value received" from the body of the guaranty, the notes were delivered in the form indicated to the plaintiff, and the Goodrick stock was placed in Smith's possession to secure him against loss on account of the guaranty. Smith and Goodrick were jointly interested in purchasing the stock to the end that they might control the policy of the corporation. Before the maturity of the two-year note plaintiff transferred it to a *bona fide* holder for value, and thereafter before such maturity Smith recognized his agreement to guaranty the payment thereof by duly waiving demand for payment of the same and protest for nonpayment, and placing thereon, in due form, a guaranty for such payment, expressing a sufficient consideration to satisfy the statute of frauds. Plaintiff at the time of the commencement of this action was the owner of the notes and Goodrick was insolvent.

The foregoing circumstances were pleaded by the plaintiff in the form of four separate causes of action against the personal representatives of Smith, followed by a prayer for relief as follows:

(1) Specific performance of the agreement to guaranty the second and third notes. (2) For reformation of such notes. (3) Judgment upon the note validly guarantied. (4) Judgment for $2,000, on account of the purchase price for the stock represented by the second and third notes. (5) Such other relief as to the court might seem just.

The defendant demurred to each of the pretended causes of action upon four grounds: Want of equity, insufficiency

of facts, defect of parties plaintiff and misjoinder of causes of action.

The demurrer was overruled. Defendant then answered to this effect: The alleged guaranty was without consideration and void under the statute of frauds. Before the commencement of this action and on the 6th day of September, 1898, suit was commenced on the notes in question which was thereafter, without trial, discontinued. The Commercial National Bank of Appleton, indorsee from plaintiff on the four-year note, commenced an action against the decedent and Goodrick in the circuit court setting forth in the complaint the circumstances alleged in the complaint herein characterizing the making of the guaranty. The action was tried resulting in a judgment dismissing the same as to Smith, and on appeal to the supreme court the judgment was affirmed. [*Commercial Nat. Bank v. Smith,* 107 Wis. 574.] Lawrence University, a corporation, indorsee of the plaintiff, April 12, 1899, commenced an action against Smith and Goodrick in the circuit court on two of the notes mentioned in the complaint, being the one payable in two years, and the one payable in three years. The decedent appeared and answered and thereafter, before the cause was reached for trial, it was discontinued.

Upon the issues joined the cause was tried resulting in findings of fact as to the circumstances under which the alleged guaranty was made in harmony with the complaint. Among other things the court found specifically, thus:

When the transaction between plaintiff, Goodrick and Smith in regard to the stock was closed up, Smith and the plaintiff were represented by their respective attorneys. The guaranty, as signed, was submitted to such attorneys and approved by them. They and all of the parties interested then believed the guaranty to be sufficient to satisfy the statute of frauds. Plaintiff agreed to sell the 470 shares of stock to Goodrick upon the express condition that three of the $1,000

notes should be satisfactorily guarantied. The stock was transferred to Goodrick upon the faith of Smith's promise to guaranty the payment of such three notes. It was agreed in writing between Smith and Goodrick that the stock should be assigned in trust to secure Smith against liability on account of his guaranty. He demanded that as a condition of becoming guarantor on the notes. In the year 1896, without any new consideration, Smith signed upon the back of the two-year note a guaranty good in form and duly waived demand for payment of such note, and protest for nonpayment.

There were findings in harmony with the allegations of the answer as to the commencement of and termination of three actions in regard to the notes prior to the commencement of this action, and findings to the effect that before the commencement of this action plaintiff requested decedent to place a valid guaranty upon the back of the notes, which he refused to do; that decedent died after the commencement of the action, and that the same was duly revived against his personal representative.

As conclusions of law the court held that plaintiff was entitled to recover against decedent's personal representative upon the note that was reguaranteed, but not upon the others. Judgment was rendered accordingly from which plaintiff appealed.

*J. C. Kerwin,* for the appellant.

For the respondent there was a brief by *Hunter & Goff,* of counsel, and oral argument by *C. F. Hunter.*

MARSHALL, J. The logical treatment of this appeal seems to require the contention of respondent's counsel that the decision in the action to enforce the four-year note is a bar to any relief in this action upon principles of *res adjudicata* to be first considered. The scope of such principles has been too often pointed out to require more than a statement there-

of at this time.  A judgment whether pleaded in bar, or given
in evidence in estoppel, as to every question within the issues
in the cause wherein it was rendered, whether actually pre-
sented and solved or not, as between the parties to the litiga-
tion and their privies, till reversed or set aside in due course
of law,—is conclusive as to the truth of the matter involved
in that and any action subsequently tried to enforce the same
cause of action whether in the same or in any other court,
and it is likewise conclusive in any subsequent judicial con-
troversy upon a different cause of action between the same
parties, or their privies, as to any question within the issues
actually presented and decided.   *Wentworth v. Racine Co.*
99 Wis. 26, 74 N. W. 551; *Grunert v. Spalding,* 104 Wis.
193–213, 80 N. W. 589; *Hart v. Moulton,* 104 Wis. 349–
353, 80 N. W. 599.  A cause of action for equitable relief
from the consequences of accepting a void guaranty is essen-
tially different from an action upon the guaranty.   The for-
mer action proceeded upon the theory that there was a valid
contract between the parties, while this action was grounded
upon the theory that at best there was only an enforcible
agreement to make such a contract.   Hence, in any event,
only the results of questions actually presented and adjudi-
cated before need be considered now on this branch of the
case.   Such results are verities for the purposes of this litiga-
tion.   The parties are not the same now as before, but the
respondent is the personal representative of Smith, and as
such a privy as regards the former suit, while the plaintiff
now was, in the main, the party interested then and is bound
the same as if he were a party to the record.   The action was
prosecuted in his interest.   He had notice thereof, an op-
portunity to participate therein, and embraced it.   As be-
tween him and his assignee of the note, in whose name the
suit was brought, the result here was conclusive, the same as
between such assignee and the defendant.   In such circum-
stances, for all purposes of the doctrine of *res adjudicata* he

was a party to the suit. *Saveland v. Green,* 36 Wis. 612; *Daskam v. Ullman,* 74 Wis. 474–477, 43 N. W. 321; *Carroll v. Fethers,* 82 Wis. 67–72, 51 N. W. 1128; *Grafton v. Hinkley,* 111 Wis. 46–54, 86 N. W. 859. The important question common to both actions and decided on the former occasion [*Commercial Nat. Bank v. Smith,* 107 Wis. 574], is whether the guaranty was based on a consideration independently from that afforded the maker of the note, and moving from the guarantee to the guarantor so as to take the transaction out of the statute of frauds. That was decided before in favor of the decedent. The case turned on the solution of that question on the appeal to this court. It follows that, regardless of the evidence now in the record and even the findings of the trial court, if contrary thereto, this case must be viewed as if Smith's promise was merely collateral to that of Goodrick and so within the statute of frauds.

Except as above indicated, the doctrine of *res adjudicata* does not bar the way to favorable consideration of appellant's appeal. The mere fact that in the former action it was claimed there was a guaranty good at law, and on the second occasion that must be deemed to have been abandoned and the action grounded on a transaction not culminating in a legal contract as intended, is not sufficient to render the former judgment a bar to the successful prosecution of this action upon principles of *res adjudicata.*

We are not unmindful of the decisions that a judgment in an action to recover on a contract of a particular character is a bar to one subsequently commenced involving the same transaction, either at law or in equity, upon the theory that the contract was not as at first alleged, but of a materially different character. There is a logical basis for such decisions, but it does not lie in the doctrine of election between inconsistent remedies or *res adjudicata,* but rather in the doctrine of estoppel. Some of such cases plainly, it would seem, confuse the two former doctrines and overlook the lat-

ter. True, the distinction between estoppel and *res adjudi-cata* is sometimes so shadowy that one, without careful analysis, would blend into the other. Nevertheless there is a distinction. We will not stop in our labor here to point it out, but assume that its existence is well understood.

*Washburn v. Great Western Ins. Co.* 114 Mass. 175, is one of the most significant of the cases above referred to. From our investigations we may well venture to say it is the pioneer case. There plaintiff brought an action to recover on a policy of insurance containing a warranty. He pleaded compliance therewith. Upon being defeated for a breach thereof he filed a bill in equity for a reformation of the policy by striking out the warranty, alleging that the same was contrary to the verbal agreement and was inserted in the writing by mistake. The court held that the judgment in the first action was a bar to the prosecution of the second, the decision being put squarely on the doctrine of election. Reference was made thereto in this way, quoting the language of Chancellor KENT:

"The suit at law and the action here are inconsistent with each other, since the one affirms, and the other seeks to disaffirm, the contract in question. Any decisive act of the party, with knowledge of his rights and of the fact, determines his election, in the case of conflicting and inconsistent remedies."

We fail to see wherein the remedies the court was dealing with were conflicting and inconsistent within that rule. Both proceeded upon the ground that there was a contract. If it was as at first alleged, an action at law was the only remedy to enforce it. If it was as alleged on the second occasion, an action in equity for a reformation thereof was the only remedy. The doctrine is well established that there can be no choice between two inconsistent remedies unless there are in fact two remedies to choose from, and they are really inconsistent, in that one is suitable to deal with relations between

the parties of one character and the other with relations of a different and inconsistent character.   The rule, it will be seen, was correctly illustrated by the court, but improperly applied. *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698. It might well have said that the plaintiff was estopped from successfully invoking equity to enforce a contract of one character after, with knowledge of the facts, having put the defendant to the expense of defending in an action at law against a claim that it was of a different character.   It is significant that it did not occur that the decision could be grounded upon the doctrine of *res adjudicata.*

In *Steinbach v. Relief F. Ins. Co.* 77 N. Y. 498, the circumstances were the same as in *Washburn v. Great Western Ins. Co. supra,* and the result the same.   It was based, however, upon the doctrine of *res adjudicata* and it would appear that of election as well, *Washburn v. Insurance Co.* being pointed out as authority, without indicating that the inconsistency of grounding one case on the doctrine of *res adjudicata* and the other on the doctrine of election was appreciated. In support of the Massachusetts decision there was at least noted a prime essential of the situation permitting the exercise of election between inconsistent remedies, viz.: "The state of facts necessary to support one remedy did not coincide with the facts necessary to support the other." *Barth v. Loeffelholtz,* 108 Wis. 562–568, 84 N. W. 846.   It may be well assumed that such feature led to the decision being grounded as it was, though manifestly such a situation may and does often exist where other essentials to the application of the doctrine of election are absent.   In the New York case, though the two are alike, the court considered that the same evidence would sustain either claim, which seems to be clearly contrary to the fact, and so justified the result upon the doctrine of *res adjudicata,* at the same time using terms indicating that the doctrine of election applied as well.

*Thomas v. Joslin,* 36 Minn. 1, 29 N. W. 344, is another

case of the character referred to.  Both cases we have dis-
cussed are cited therein as authority for the conclusion
reached.  The doctrine of election and of former adjudica-
tion were both referred to, and, as in the other instance, with-
out appreciating the distinction between the two.  That is
quite clear, in that it was not seen that the Massachusetts case
went distinctly upon the ground of election while the New
York case, though it went upon the doctrine of *res adjudi-
cata,* referred to the Massachusetts case for authority.  In a
later case the Minnesota court recognized that *Thomas v.
Joslin, supra,* turned on the doctrine of election.  *Spurr v.
Home Ins. Co.* 40 Minn. 424, 42 N. W. 206.  But a distinc-
tion between the two cases was suggested, in that in the for-
mer situation the first case proceeded to final judgment,
while in the latter it did not.  The circumstance was rightly
deemed important as regards the doctrine of *res adjudicata*
or estoppel, but not that of election, since any affirmative act
with knowledge of the facts to enforce one remedy, such as
the commencement of an action, as effectually waives all
other remedies as the prosecution of an action to judgment.
*Smeesters v. Schroeder, ante,* p. 116, 101 N. W. 363.  In
a still later case, *Rossman v. Tilleny,* 80 Minn. 160, 83 N.
W. 42, as we read it, a situation similar to that in *Thomas
v. Joslin, supra,* was presented.  Defendant was put to the
expense of a successful defense to a claim against him for
stipulated compensation for professional services.  Plaintiff
persisted until judgment was rendered against him.  He then
commenced a new action upon the theory of implied contract
and *Thomas v. Joslin, supra,* was invoked in vain, the court
remarking as to the latter situation that the evidence required
in the two actions was different, inferentially saying that in
the former situation it was not, which seems plainly to be
contrary to the fact, and to the prevailing idea in the case,
which was there pointed to as authority, viz.: *Steinbach v.
Relief F. Ins. Co.* 77 N. Y. 498.  However, in this later case

we find suggested for the first time what seems to be the only legitimate basis for the decision in *Thomas v. Joslin,* 36 Minn. 1, 29 N. W. 344, in this language: "It was properly held" there, said the court, ". . . that plaintiff was estopped, having elected to stand trial in the first action on the incomplete contract."

We have discussed at some length *Washburn v. Great Western Ins. Co.* 114 Mass. 175, and the cases based thereon, since it seemed that if they were rightly grounded on the doctrine of election or that of *res adjudicata* they might be decisive on this appeal. We do not think that they were, neither do we think that as vindications of the doctrine of estoppel *in pais* they should influence the decision here. Doubtless, if a person with knowledge of the facts invokes a judicial remedy upon one theory, as regards a particular subject-matter,—for example, that it produced a contract of one character,—and compels his adversary, at considerable expense, to successfully defend against such theory, it would be inequitable, at least, to permit such person to again use a judicial remedy, though consistent with the other, to recover on a different cause of action than at first alleged,—one not affected by the doctrine of *res adjudicata* or the election of remedies, but proceeding upon the theory that the transaction in question produced a contract differing somewhat from that first alleged. The defendant might, in some circumstances, invoke the equitable principle of estoppel *in pais* against the vexatious litigation, but we cannot discover that there was any such situation here. The action commenced by the bank upon the four-year note was instituted and prosecuted upon the theory that the facts now relied upon as a ground for relief, entitled the holder of the note to legal relief upon a contract of guaranty. There has been no change of position by the plaintiff, as regards the facts. It having been decided in the legal action that they were not sufficient to make a guaranty good at law, he invoked equity to grant

such relief as it can afford, in view of the evident purpose of the parties to make such a guaranty.

What has been said sufficiently answers the contention of counsel for respondent that the commencement of the action on the four-year note was an election of remedies. There is much inaccurate language in authorities on this subject. A mere election of remedies, where there are several, does not waive others. *Barth v. Loeffelholtz,* 108 Wis. 562, 84 N. W. 846. It is only where, as before indicated, there are several remedies which are inconsistent that the choice of one waives the rest. Such inconsistency is to be looked for in the relation between the parties which the different remedies suggest. If one sues for damages for breach of or to otherwise recover on contract corresponding relations are necessarily alleged or implied to exist, while, if growing out of the same transaction, that one sues to recover property parted with to the defendant on contract a termination of contractual relations by rescission is suggested. In one case a subsisting contract is assumed or alleged, in the other absence thereof is necessary. Failure to note the true test of whether the doctrine of election applies or not has led to so many instances of improper references thereto that great care must be exercised in the selection of judicial guides in a given situation or one will be liable to go astray. Where more than one remedy to deal with a single subject of action exists and they are inconsistent with each other, after the choice of one the others to all intents and purposes no longer exist. Where more than one remedy exists to deal with a single subject of action, but they are not inconsistent, nothing short of full satisfaction of the plaintiff's claim waives any of such remedies. All may be pursued concurrently, even to judgment, but satisfaction in one reaching the whole claim is a satisfaction in all. Where only one remedy exists, but the plaintiff asserts one which he does not in fact possess, the proper remedy is not waived. In a late work the author rightly remarks

that the "test seems easy of application, yet the fact has not prevented confusion and a degree of contradictions in reported cases." It will not do to take it for granted that when election of remedies is spoken of in a judicial opinion, the principle that the selection of one remedy waives the use of all others was involved. 7 Ency. Pl. & Pr. 363.

The purpose of the action on the four-year note was to vindicate the rights of appellant as to the subject-matter in question by recovering on contract. The transaction claimed at first is identical with that claimed now. The fact that in one case it was claimed that it created a contract good at law and in the other one good in equity, or that the failure to create, as was intended, a contract good at law or in equity, created obligations of equivalent dignity in equity, does not satisfy the rule that a choice of one remedy waives the others. It is by no means uncommon to bring an action upon a written contract, and upon its subsequently appearing that the writing was not made as intended by both parties, to invoke equity jurisdiction to reform and enforce it as perfected. *Wisconsin M. & F. Ins. Co. Bank v. Mann,* 100 Wis. 596, 76 N. W. 777, is a significant instance thereof.

If there were no other answer to the suggestion that the commencement of the first action waived all other remedies against Smith, or his personal representative, a conclusive one would be found in the fact that if any effective remedy at all existed for appellant it was to be found in equity, while the one chosen was at law. As before indicated, it is a cardinal principle of the doctrine of election that it is to be applied only where there is opportunity to choose between two or more remedies which are appropriate.

The doctrine of laches is invoked by respondent in support of the judgment. Delay in a case like this evidencing acquiescence or that no mistake was in fact made is one thing, while delay to insist upon one's rights as to a mistake known to exist is quite another. The former is not claimed

in this case.   Delay, under some circumstances, is as efficient
to extinguish the right as the statute of limitations, but in it-
self it is ineffective as a defense.   It is not a bar in equity
when it would not be at law, in the absence of circumstances
rendering the late assertion of the 'right so prejudicial to the
adverse party that it would be inequitable to permit it to be
done successfully.   *Kropp v. Kropp,* 97 Wis. 137, 72 N. W.
381.   There was no unreasonable delay here.   This action
was commenced promptly after the termination of the one at
law, which irrevocably established as a fact that the remedy
first asserted was inappropriate, even if the facts* were as
alleged.

The point is made that if there was a mistake in reducing
the verbal agreement to guaranty the notes to writing, it was
one of law and hence irremediable.   A mistake of law as well
as of fact may, in some circumstances, be remedied.   The
general statement often indulged in that equity may relieve
one from the consequences of a mutual mistake of fact, but
not from a mistake of law, is very misleading.   Error as to
the sufficiency of language to put in legal form a transaction
upon which the minds of two parties have met, may be as
effectually dealt with as one purely of fact.   Upon due con-
sideration in *Wisconsin M. & F. Ins. Co. Bank v. Mann,*
*supra,* the rule was stated thus:

"A mistake in the contract itself, springing from ignorance
of the law, is one thing, and mistake in the legal meaning at-
tributable to the words used to express a contract is quite an-
other.   .   .   .   Where there is a mutual mistake, either of
fact in making a contract, or of law or fact in the reduction
of the contract to writing, the person injured thereby may
have it reformed in equity in accordance with the truth, in
the absence of facts or circumstances constituting a waiver of
the remedy or an estoppel to the assertion of it."

To the same effect are *Green Bay & M. C. Co. v. Hewitt,*
62 Wis. 316, 21 N. W. 216, 22 N. W. 588; *Silbar v. Ryder,*
63 Wis. 106, 23 N. W. 106; *Whitmore v. Hay,* 85 Wis. 240,

55 N. W. 708; *Beardsley v. Knight,* 10 Vt. 185; 2 Pomeroy, Eq. Jur. (2d ed.) §§ 843–845.

We now come to the question of whether a mistake in reducing to legal form a mere collateral promise to answer for the debt, default or miscarriage of another it relievable by the equitable remedy for reformation or specific performance. The finding that the corporate stock was sold and transferred to Goodrick upon the faith of Smith's agreement to guaranty payment of three fifths of the purchase price thereof is urged upon our attention. As an original matter, we should say that comes far short of finding that the performance by appellant of the main contract was beneficial to Smith, so as to render the transaction between them independent of that between the former and Goodrick, satisfying the rule declared in *Commercial Nat. Bank v. Smith,* 107 Wis. 574, 83 N. W. 766, or to suggest that there was fraud in fact or in law in the failure of Smith to execute a valid guaranty. The distinction between a purely collateral undertaking, which is within the statute of frauds, and an original promise which may also be secondarily collateral to another, but is, nevertheless, without the statute, is well stated in Stearns, Law of Suretyship, § 39, in these words:

"A distinction must be made, however, between a beneficial consideration, which is a mere inducement to enter into the suretyship contract, and a beneficial participation in the main contract. It is the latter only which takes the case out of the statute. The promisor may receive a money consideration for his promise, or he may be induced to make the contract for other valuable considerations beneficial to him, yet it will be void if not in writing, but if the performance of the main contract, to which his suretyship is collateral is a benefit to him, a verbal promise in guaranty is sufficient."

Illustrations of the application of that principle are found in the following cases: *Dyer v. Gibson,* 16 Wis. 557; *Houghton v. Ely,* 26 Wis. 181; *Hutson v. Field,* 6 Wis. 407; *Borchsenius v. Canutson,* 100 Ill. 82; *Fears v. Story,* 131 Mass.

47; *Bluthénthal v. Moore,* 106 Ga. 424, 32 S. E. 344; *Davis v. Patrick,* 141 U. S. 479, 12 Sup. Ct. 58. But, as we have heretofore indicated, if there were any doubt as an original proposition as to whether appellant's promise was collateral and within the statute of frauds, that doubt could not be resolved in favor of appellant, whatever construction might be put upon the findings of the trial court, since the former adjudication of the matter is conclusive in favor of the respondent. We should not have discussed the matter at all, other than to show that it was covered by such adjudications, were it not for the fact that it is made quite prominent in appellant's argument.

So, as before stated, the case comes down to this one proposition: Can a defectively written purely collateral promise to answer for the debt, default or miscarriage of another, by interference of a court of equity,—there being no question as to what the facts are and that the minds of the parties met on all the essentials of a verbal promise to make a valid guaranty, but through mutual mistake, without any element of fraud, they failed to embody it in the writing,—be reformed so as to make the same satisfy the statute of frauds? Or can, in such a case, a court of equity interfere and compel specific performance of the verbal agreement to make a valid guaranty?

It will not do to hold that the mere delivery of the consideration as between the original parties to the contract, though sufficient to support a guaranty, if one be properly made, is a part performance of a verbal contract to make a valid guaranty, taking the latter out of the statute of frauds, under the familiar principle that where relations between parties to a verbal agreement required to be reduced to writing to satisfy the statute of frauds and so give it validity, have so far ceased to be executory as to one party thereto that it would operate as a fraud upon him to permit the other to successfully put up the statute of frauds as an excuse for nonperformance,—a

court of equity, while respecting the statute, will lay its hands upon that other and enforce obligations deemed to have been created by the circumstances not within the statute, but resting upon him in good conscience with a corresponding equitable remedy to give them vitality; that equity thereby may leave the statute of frauds intact, yet satisfy the ends of justice by avoiding the injurious consequences that would, or might, otherwise flow from the mistake. It would take much time and require a very broad field to be explored to define the precise boundaries to which such obligations are deemed to be cognizable by a court of equity, so that, while respecting the statute of frauds, it can prevent its being used to accomplish the very purpose it was designed to avoid. That it cannot be carried so far as to entirely nullify the statute would seem not to be open to question. Courts of equity have been accustomed to take great liberties, and probably seldom too great, in this matter, but they have never gone so far but that in each instance it was at least assumed that the real policy of the statute was left intact.

The growth of equity in the line under discussion, while very rapid at first, has not perceptibly advanced in recent years. Many judicial warnings may be found in the books against any further development of the idea that the statute of frauds may be "uplifted," so to speak, and the consequences of noncompliance with it thereby be avoided, pointing to instances where it was thought it had already been extended to the danger line, if not beyond, and suggesting that to further extend it would, in effect, avoid it altogether.

While it is true that equitable principles never necessarily remain stationary, that they may advance, from time to time, as the exigencies of new situations seem to demand, to the end that justice may not fail of vindication, probably it is true that the needs of such a situation, affecting the statute of frauds or limitations, should be of an extraordinary nature to justify a court in creating an essentially new precedent.

In that regard such statute is quite as securely intrenched as that of limitations. Regarding the latter it has been held that if one is merely betrayed into ignorance of his rights as to another by wrongful conduct of the latter until the time shall have expired for him to invoke judicial remedies to vindicate the same, such other is not thereby estopped from pleading the limitation period in respect to the matter; that standing upon his statutory rights he may safely confess his misconduct and defy his adversary in any judicial forum. *Pietsch v. Milbrath, post,* p. 647, 101 N. W. 388; *Bank of Hartford Co. v. Waterman,* 26 Conn. 324. That fraud may go so far, however, as to any cause of action as to call for equitable protection against the consequences of the statute of limitations or frauds, is recognized in some jurisdictions. *Holloway v. Appelget,* 55 N. J. Eq. 583, 40 Atl. 27; Fry, Specific Performance, § 552. But that is not here.

The conflict in authorities as to how far equity power may interfere to protect one from the consequences of non-compliance with the statute of frauds is well indicated in 2 Pomeroy, Eq. Jur. §§ 864–867, and note on *Glass v. Hulbert,* 102 Mass. 24; *Pelesch v. Hambach,* 48 Wis. 443, 4 N. W. 565. It is commonly said that "the statute is intended to prevent frauds and not to promote them," and therefore courts will not give effect to efforts to turn the intended beneficent instrument into one with which to perpetrate injustice. *Lex nemini facit injuriam.* So far as that may legitimately go, the principle is one of inestimable value in judicial dealings with the affairs of men. True, the statute of frauds is no real obstacle in the way of administering equitable remedies so as to promote justice and prevent wrong, but in testing that principle by the proper limitations of the words "justice" and "wrong" the function of the legislature must be respected as to what is right. That which, operating in its proper sphere of action, the legislature has proclaimed to be right, must not be declared to be wrong with a corresponding remedial right

in a judicial sense. It having unqualifiedly stated that delay for a specified period of time after a cause of action shall have accrued to enforce it, shall be deemed to have extinguished it, the courts cannot legitimately ingraft exceptions upon the enactment. If the consequences in any given case are avoidable it must be one where that can be done and the statute be left really inviolate. Courts must regard wrongs not remediable because of the statutes as not wrongs at all, at least of any greater dignity than those breaches of moral obligations which must always be left to be redressed in other ways than by judicial tribunals, they not being within the maxim: "There is no wrong without a remedy."

Counsel for appellant refer to authorities where there was part performance after the execution of the defective agreement, or where on the faith of it at the time of the execution thereof one party thereto parted with value to the other, and subsequently a court of equity exercised its authority to prevent the consequences that would otherwise flow from the failure to put the agreement in suitable form. In all such cases there are special circumstances referred to held sufficient to take the case out of the statute. To make those authorities, which, of course, announce a very familiar principle, fit this case in any view that can be taken of it, we must be able to find special circumstances warranting the application thereof. There are none which we can discover. The verbal agreement, if we are to fall back on that, and the writing are so closely connected with each other and blended into one transaction as to be inseparable. Whatever was done on the faith of one was grounded on the other. Whatever was done by appellant occurred as truly after the defective writing was made as after the agreement to make the writing. One was as infirm as the other, both at law and in equity. No consideration moved directly or indirectly to Smith, nor was any fraud, in fact or in law, perpetrated by him or could result from his acts, such as is commonly held sufficient to create an

equitable obligation not affected by the statutes. So we have a clear case where by the policy of the statute it is conclusively presumed that the promisor did not intend to bind himself, and that the promisee has no reason to complain of his refusal to be bound, there being no evidence to the contrary created in the manner provided by law.

If we could treat the verbal agreement to make a valid guaranty as separate from the writing, as before incidentally suggested, we would yet face the fact that the former is void because there was no circumstance rendering it a fraud in Smith not to perform it, so as to take it out of the statute. An agreement to make a collateral promise is as much within the statute as the promise agreed upon would be, if imperfectly reduced to writing. *Wills v. Shinn,* 42 N. J. Law, 138; *Dee v. Downs,* 57 Iowa, 589, 11 N. W. 2; *Carville v. Crane,* 5 Hill, 483; *Bushell v. Beavan,* 1 Bing. N. C. 103; *Whitchurch v. Bevis,* 2 Brown, C. C. 565; *Wood v. Midgley,* 5 De G., M. & G. 41; De Colyar, Guaranties, 59. This language is used on the subject in the work last cited:

"It has also been made the subject of discussion whether or not a promise to give a guaranty (as distinguished from a promise to procure one) is a special promise which falls within the statute. It is, however, obvious that a promise to give a guaranty at a future time entirely falls within the mischief which the enactment was intended to guard against, and, indeed, that if the statute could be evaded by making such a promise it would be useless."

The author quotes from the opinion of Pollock, C. B., in *Mallett v. Bateman,* L. R. 1 C. P. 163, as follows:

"If we were to hold that a contract of guaranty must be in writing but that a contract to give a guaranty need not, we should, I think, be committing the same mistake as our predecessors did with reference to the statute of uses. . . . Whether the decision of the courts of equity as to uses and trusts were beneficial or not I do not stop to inquire, but undoubtedly the whole doctrine arose out of a desire to frustrate

the intention of the statute of uses. I trust that we shall not commit a similar mistake in construing the statute now under consideration."

In Fry on Specific Performance of Contracts, at section 552, the use of equity jurisdiction to compel performance of a verbal agreement to make a guaranty in writing is spoken of thus:

"Such a procedure affords a most easy means of evading the intention of the statute, and introducing the mischief it was designed to remedy. . . . After a parol contract, a refusal to sign a written one is no fraud of which the court can take cognizance."

It should be remarked in passing that the author was then endeavoring to define the limits of the doctrine,—having, of course, no application to this case,—that when the want of a writing is due to fraudulent prevention thereof by the person seeking to take advantage of the circumstances, he is estopped from obtaining such advantage. The general conclusion of the author is that the mere refusal to carry out a verbal agreement to execute a contract in writing good under the statute of frauds creates no remedial right in favor of the party to whom the agreement was made. That being so it certainly could create no such right in favor of a collateral promisee, who parts with nothing at the time of the promise nor is expected to thereafter to the collateral promisor. Nowhere is it suggested by the author, or by any one who has written on the subject, so far as we are able to discover, that failure to reduce a verbal agreement to writing, not characterized by fraudulent inducement or mistake, or by other special circumstances accompanied by such change of position on the part of the promisee beneficial to the promisor by part performance within the rule on that subject—that a failure to fully perform would work a fraud on him and be a fraud in the promisor.

In considering this subject we must not lose sight of the

fact that equity never interferes to give one immunity, as to
any transaction, from the consequences of the statute of
frauds, unless those consequences would be not only a fraud
upon one but a fraud in the other party to the transaction.
Fry on Specific Performance of Contracts, § 557. So the
whole doctrine as to part performance taking a transaction
that would otherwise be within the statute of frauds out of it
is based on the idea that the party seeking to shield himself
behind the statute obtained something of value, and his ad-
versary parted with it to him after the completion of the
agreement and on the faith of it. That could never occur
ordinarily as to mere personalty so as to call into activity
equity jurisdiction to avoid the otherwise consequences of the
statute of frauds, since the part performance of itself would
take the transaction out of the statute by creating a legal lia-
bility.    Sec. 2308, Stats. 1898; Pomeroy on Contracts, sec.
100.    From the fact that one who hides, so to speak, be-
hind the statute of frauds, at law obtains title by force of
such statute to something of value without rendering a just
equivalent therefor, or being amenable to any legal remedy,
springs the obligation on the one side and the corresponding
equitable remedy on the other.    The principle has nowhere
been more accurately and understandingly defined than by
Lord WESTBURY in *McCormick v. Grogan,* 4 H. L. 97, in these
words:

"The court of equity has from a very early period de-
cided that even an act of Parliament shall not be used as an
instrument of fraud; and if in the machinery of perpetrat-
ing a fraud an act of Parliament intervenes, the court of
equity, it is true, does not set aside the act of Parliament, but
it fastens on the individual who gets a title under that act,
and imposes on him a personal obligation, because he applies
the act as an instrument for accomplishing a fraud.    In this
way the court of equity has dealt with the statute of frauds."

So here we find entirely absent the prime essential of part
performance upon which the appellant's case is assumed to be

grounded. Of course, part performance by Smith in that he made a good guaranty on one of the notes when requested to some time after the making of the defective paper, does not count. A mere acknowledgment by one entitled to the protection of the statute of the existence of a void obligation by partly performing it does not render further performance a fraud upon the promisee in any sense. Mere part performance as between the parties to the principal contract could not be held to take the collateral contract of suretyship out of the statute without nullifying it, because that necessarily occurs in every case where the original promisee acts at all. *Mc-Gaughey v. Latham,* 63 Ga. 67. Said an eminent writer respecting the equitable doctrine of part performance of contracts of the kind under consideration, "There is no occasion or opportunity either for the equitable relief of specific execution, or the doctrine of part performance." Pomeroy, Contracts, sec. 100.

We have not found it necessary in reaching a conclusion to consider whether an agreement of the sort here could, under any circumtances, be deemed in equity to have been taken out of the statute. Doubtless, in the main, at least, the doctrine in that regard is confined to contracts relating to lands (Pomeroy on Contracts, sec. 101), and those which a court of equity would entertain a suit for specific performance of if they were in statutable form. Sec. 2305, Stats. 1898, refers only to such contracts and was doubtless supposed at the time of its enactment to cover those which courts of equity had been accustomed to deal with, saving parties, where necessary to prevent injustice, from the consequences of the statute of frauds. That does not prevent the same equitable principle from being applied to other situations, as the cases indicate that it has, but it suggests caution in the development thereof in going beyond the boundaries of precedent. The maxim *"Lex deficere non debet in justitia exhibenda"* (the law ought not to fail in showing justice), which is the guiding principle of equity and

in harmony with which the doctrine was evolved, that when a situation is met with where the application of the statute would give one a right to the fraudulent despoliation of another, it may be deemed "uplifted" that an obligation springing from the relations of the parties and assumed to be outside of the statute may be enforced and injustice be thereby prevented, cannot be carried so far as to really nullify the statute without entering upon the broad field of judicial usurpation. The boundary would be crossed by equitable interference to give vitality to a mere collateral promise of suretyship in which there was no consideration moving to the guarantor supporting the equitable remedy of reformation, or special circumstances supporting other equitable relief.

We have not discussed specifically the subject brought to our attention, of whether by the equitable remedy for reformation, a contract of guaranty, so called, not a contract at all, because, though in writing, not containing the statutory essentials, can have those essentials placed therein by a judicial decree. If it could, the statute would seem to have little force. Certainly any circumstance that would justify such an exercise of judicial authority would justify the use of the remedy for specific performance. *Petesch v. Hambach,* 48 Wis. 443, 4 N. W. 565. As we have found, the facts here will not support the former remedy, it seems plainer still they will not support the latter.

It follows that in any view that can be taken of this case the judgment appealed from cannot be disturbed.

*By the Court.*—Judgment affirmed.

KERWIN, J., took no part.