## B. N. KAGER *et al.* v. IRA M. VICKERY *et al.*

### No. 11,439.   (59 Pac. 628.)

VOID JUDGMENT—*Collateral Attack in Ejectment.* A judgment for money and for the foreclosure of a mortgage on real estate against a deceased defendant who had theretofore been duly served with process is void, although the fact of death does not appear of record, and it may be collaterally impeached by the heirs of the deceased, if not made parties to the foreclosure proceeding, in an action brought by them for the recovery of the land sold and conveyed in satisfaction of the judgment.

Error from Cowley district court; W. T. McBRIDE, judge. Opinion filed January 6, 1900. Reversed.

*Chas. L. Brown,* for plaintiffs in error.

*C. T. Atkinson, J. E. Torrence, Madden & Buckman, Jackson & Love,* and *Pollock & Lafferty,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action in ejectment, for partition, and for the rents and profits of the land. Eustace B. Kager was at one time the owner of the tract in dispute. He and his wife, Ada L. Kager, executed a mortgage on the land to secure the payment, of money. They made default in the payment of the debt, and on the 9th day of September, 1878, suit to foreclose the mortgage was brought in the circuit court of the United States for the district of Kansas. On the 23d day of September, 1878, they were both duly served with a subpœna in chancery issued in the case. On January 8, 1879, the defendant Eustace B. Kager died intestate, leaving surviving him his wife, Ada, and two minor children. These two children were the plaintiffs in the action of ejectment in the

court below and are the plaintiffs in error in this court. On July 15, 1879, final decree was rendered and entered in the foreclosure action against the defendants, Eustace B. and Ada L. Kager. This decree adjudged the amount due on the mortgage indebtedness and directed a sale of the land to be made to satisfy it.

The sale was made on the 23d of February, 1880, and on the 5th day of April, 1880, the sale was confirmed and a deed executed to the purchaser, one J. B. Watkins. By mesne conveyances the title of Watkins has been transferred to Ira M. Vickery, the defendant in the ejectment suit and the defendant in error here. B. N. Kager and Ada Kager, the children and heirs of Eustace B. Kager, having arrived at majority, instituted an action for the partition of the land and to recover an undivided one-half of it, and for the rents and profits of such portion, on the theory that their ancestor having died before the rendition of the decree of foreclosure such decree was a nullity and could not be made the basis of the sale that was had and the deed that was executed. It is to be assumed that the decree was procured by complainant's counsel and rendered by the court in ignorance of the previous death of the defendant Eustace B. Kager.

Upon the above-recited state of fact these questions arise : Were the foreclosure decree rendered by the circuit court on the 15th day of July, 1879, and the succeeding sale and deed void as to the plaintiffs in error, and subject to the collateral attack made on it, by reason of the death of Eustace B. Kager on the 8th day of January, 1879, after the bringing of suit and service of process upon him? or, Did his death render the proceedings had thereafter voidable only and not subject to collateral attack ? The court below ruled that the decree and other proceedings were

not void but were voidable only, and therefore could not be collaterally attacked. From this ruling the plaintiffs below have prosecuted error to this court. In our judgment the contention of the plaintiffs in error is sound and must prevail. The foreclosure decree and subsequent proceedings were void and constituted no basis for a claim of title. Upon the precise question involved counsel for plaintiffs in error has not carried his investigation of the authorities along the entire line of decisions applicable thereto, and because thereof we have been compelled to make such independent research as the multiplicity of our labors would allow, and in consequence have rested our judgment largely upon what appears to be the reason and principle of the question and less upon the authority of adjudged cases. We are free to confess that the position of the defendants in error is supported by the greater weight of authorities numerically considered. In the Encyclopedia of Pleading and Practice, volume 11, page 843, it is said :

"As to the validity of a judgment rendered for or against a party after his death the authorities seem to be hopelessly irreconcilable. Thus, according to numerous decisions, such judgments are utterly void and may be collaterally attacked. The decided weight of authority, however, seems to be that if a court of general jurisdiction, or a court which has acquired full jurisdiction over the cause and over the parties, renders a judgment for or against a party after his death, the judgment is not for that reason void. Such a judgment, while erroneous and voidable when properly assailed in a direct proceeding for that purpose, is valid until reversed by some appropriate proceeding, and may not be collaterally attacked."

In Freeman on Judgments, 4th ed., volume 1, section 153, it is said :

"The decisions respecting the effect of judgments

for or against persons who were not living at the time of their rendition are conflicting and unreasonable. Some of them apparently affirm that a judgment so rendered is void under all circumstances, and others that it is valid under all circumstances, because its rendition implies that the parties for and against whom it was given were then living, and that to show that either was then dead is to dispute the verity of the record, and therefore not permissible.''

In Black on Judgments, volume 1, section 200, it is said :

'' The great preponderance of authority is to the effect that, where the court has acquired jurisdiction of the subject-matter and the persons, during the lifetime of a party, a judgment rendered against him after his death is, although erroneous and liable to be set aside, *not void* nor open to collateral attack.''

However, in the preceding section (199) the author says :

''At the common law an action was abated by the death of a sole plaintiff or defendant. And in some of the states the doctrine appears to be irrevocably settled that a judgment against a person who was dead at the time of its rendition is absolutely null and void.''

In *Life Association of America v. Fassett*, 102 Ill. 315, the court says :

' '' Much of the confusion and uncertainty which prevail in the authorities on this subject is attributable, doubtless, to the fact that courts, in jurisdictions where the common-law system obtains, in attempting to follow the adjudications of other courts, have failed to distinguish the cases resting on purely common-law grounds from those resting, in whole or in part, upon statutes modifying the common law. A careful examination of the authorities clearly shows that a judgment by the common law, in the absence of any statutory provisions on the subject, against a dead

person, either natural or artificial, is absolutely void,
and the fact that service may have been obtained, or
the suit commenced, before the death of the party,
makes no difference in this respect; and this was un-
questionably the rule from the earliest period of the
common law down to the seventeenth year of the
reign of Charles II, when the British parliament
passed the first act somewhat modifying the common
law on the subject. *Randel Case*, 2 Mod. 308; 1 Salk.
8; 2 Sandf. 72, note *m*. The rule of the civil law was
the same. 7 Rob. Practice, 157.

"By statute (17 Car. 2, ch. 8, sec. 1) it was enacted,
in substance, that the death of neither plaintiff nor
defendant, between verdict and judgment, should be
assigned for error, provided the judgment should be
entered up within two terms after such verdict. The
courts of Westminster, in giving a construction to this
act, held that where a party—and there was no dif-
ference between plaintiff and defendant in this respect
—died in term time, though before verdict, the cause
might nevertheless proceed to trial and judgment,
upon the theory the entire term was in contemplation
but one day. (2 Sandf. 72, note *m*.) The judgments
in these cases were entered in precisely the same man-
ner as if the death of the party had not occurred, and
the statute applied as well where the right of action
did not survive to or against the legal representatives
of the deceased party, as where it did. Ibid.

"The next legislation on the subject was the statute
of 8 and 9, W. 3. Section 6, chapter 11, of that act,
provided, in substance, that in all actions to be com-
menced in any court of record, if the plaintiff or de-
fendant should happen to die after interlocutory and
before final judgment, the action should not by reason
thereof abate, if such action could be originally prose-
cuted or maintained by or against the executors or
administrators of the party dying; but the plaintiff
in such case, or, in the event of his death after such
interlocutory judgment, his executors or administra-
tors, might have a *scire facias* against the defendant,
or, if he should die after such interlocutory judgment,
then against his executors or administrators, to show

cause why damages should not be assessed or re-
covered in such action, etc.   It will be perceived that
this act is in some of its main features much like our
own statute on this subject, and is doubtless the orig-
inal from which our own was modeled, though ours
is unquestionably a great improvement on the English
model.    This act, it will be further observed, extends
only to cases where the death of either party occurs
after an interlocutory judgment.

"This brief reference to the earlier decisions founded
on the common law, and subsequent legislation on the
subject, clearly shows that the idea that a judgment
against a dead person is voidable only, had its origin
in the construction given to the act of 17 Car. 2, above
mentioned, and any extension of the doctrine to cases
not falling within that act, or other acts of a similar
character, would, on principle, be a clear misapplica-
tion of it.   It is also to be observed that these statutes,
having both been passed since the fourth year of the
reign of James I, are not of any binding force in this
country, and it is clear the decisions of the English
courts construing them are likewise, on principle, of no
authority here, and so far as they have been acted upon
by the courts of this country in deducing the common
law as to the effect of a judgment for or against a dead
person, they have led, as already remarked, to much
misapprehension and confusion on the subject.   Such
a judgment, when tested by the common law alone, as
we have already seen, is absolutely void."

It is proper, however, to say that in the subsequent
case of *Claflin v. Dunne*, 129 Ill. 241, 21 N. E. 834, the
supreme court of that state repudiated the quotation
we have made from *Life Association v. Fassett*, as being
a *dictum*.    Therefore, we have not made the quotation
as expressive of the rule of authority in Illinois, but
as the pertinent and deliberate declaration of eminent
judges on the abstract question of law, and also his-
torically on the origin and progress of the innovation
in the common law made by the cases holding to a

contrary doctrine. In the view of Mr. Black, and also in the view of the supreme court of Illinois as first expressed, it would appear that at common law a judgment against a dead man was a nullity. We have not been able to examine many of the numerous decisions which appear to hold to the contrary. It is altogether likely that the reasons for the complete reversal which they have made of the common law upon the subject have been, in many instances, influenced by statutory provisions. Some of the cases we have read appear to have been so influenced. To hold that a valid judgment can be rendered against a dead man — that is, a judgment which can be made the basis for an assertion of title adverse to his heirs or legal representatives — would seem to be a holding requiring the sanction of a statute more or less explicit in its terms. There is no statute in this state which in terms or by implication sanctions the rendition of a judgment against one deceased. The civil code, section 40 (Gen. Stat. 1897, ch. 102, § 40; Gen. Stat. 1899, § 4284), reads as follows:

"An action does not abate by the death or other disability of a party, or by the transfer of any interest therein, during its pendency, if the cause of action survive or continue. In case of the death or other disability of a party, the court may allow the action to continue by or against his representative or successor in interest."

This statute, however, is no authority for the rendition of a judgment against a dead man. It simply provides that in the case of a cause of action which may survive to the party plaintiff or against the party defendant, the death of either of such parties shall not abate the action; that is, the action shall not be stricken from the docket. The proceedings so far conducted shall not go for naught, but may be con-

tinued in the name of or against properly substituted plaintiffs or defendants. The statute means that the progress of a case, though arrested at the point at which death intervenes, nevertheless thenceforward may be conducted by those upon whom the right of action devolves, or against those upon whom the liability descends. This statute, however, does not assume to validate proceedings conducted in the name of or against deceased persons. It simply provides that if parties die the proceedings begun may be thereafter conducted in the name of or against their successors in interest. The common law has been nowise changed, therefore, by statute in this state. The common law, as we believe, gave no sanction whatever to judgments against dead persons, even though such persons had been in their lifetime subject to the jurisdiction of the court by complaint duly filed and process duly served. As remarked by the supreme court of Mississippi, in *Gerault, Adm'x, v. Anderson*, Walk. (Miss.) 30, 12 Am. Dec. 521:

"To say that the court had jurisdiction over the dead would contradict every principle of law and rule of proceeding. Why, in chancery, on the death of a party and the transmission of his interests to another, is a bill of review required? Why is a suit said to abate on the death of either party? The answer is, that on the death of the party his interest ceases, and the jurisdiction of the court ceases also.

"In courts of justice there must be *actor, reus*, and *judex*, before the court can act effectually to bind the parties."

Nor do the statutory provisions for the revivor of judgments bear upon the question. By statute judgments may be revived, but that means that judgments which have been rendered against *living* persons may be revived after the death of such persons, not that judgments rendered against dead persons as though

they were living may be revived. As remarked by the supreme court of Tennessee, in *Carter and others v. Carrigers, Adm'rs, and others*, 3 Yerg. 411, 24 Am. Dec. 585 :

"The object of all law is the living man, not the dead body. The defendants in error's case is not helped by a *scire facias ;* its object is to enforce against the administrators a lien previously established against and fixed upon their intestate. When there is no such lien, the *scire facias* is powerless ; its action is not original, but consecutive and successive ; wholly dependent upon the liability created against the living man. Without this foundation, the *scire facias* against the administrator is only an inoperative and empty form, without substance and without effect."

The principle of the question for decision has been already considered by this court in *Halsey v. Van Vliet*, 27 Kan. 474. The facts of that case were that a judgment for money was recovered against a defendant who subsequently to its rendition died intestate. Before a revivor of the judgment was had an execution was issued. After revivor, and less than five years therefrom, another execution was issued. This execution, however, was not issued within five years from the date of the judgment, nor within five years from the date of the preceding execution. The validity of a sale of land made upon the execution last issued was drawn in controversy. It was held by a majority of the court that the first execution having been issued after the death of the judgment debtor and before the revivor, and while there was no defendant in being against whom or against whose property the process could run, such execution was null and void, and its issuance could not have the effect to keep the judgment from becoming dormant intermediate the death of the debtor and the issuance of the execution on the

revived judgment. The reason for the decision, of course, was that judicial proceedings against a dead man or against his property are nullities. If the issuance of an execution against the property of a deceased debtor on a judgment rendered against him in his lifetime is a nullity, *a fortiori* would a judgment rendered against a dead man be a nullity.

In the case of *County of Rice v. Lawrence*, 29 Kan. 158, a judgment against a convict in a case commenced against him before conviction was vacated upon direct proceedings instituted for the purpose. It was unnecessary in that case to determine whether the judgment was void in the sense of being subject to collateral attack, but it was characterized as a "nullity," and the trend of the opinion by Mr. Chief Justice Horton seemingly carried to the point of its utter invalidity upon collateral attack.

Upon reason, and upon the authority of many adjudged cases, we are constrained to hold that the judgment of the court below was erroneous and should be reversed. Such reversal is therefore ordered, with directions to proceed in accordance with this opinion.