MOEHLENPAH, Administrator, and others, Appellants, vs. MAYHEW, Respondent.

*January 9—March 30, 1909.*

(1–4) *Judgment: Prior death of one defendant: Conclusiveness be-tween defendants.* (13, 14) Res judicata. (5) *Presumptions: Statutes of other states.* (6, 7, 13) *Findings: Materiality: How far conclusive.* (7–15) *Rescission of contracts: Sale of re-mainder: Mutual mistake of fact: Pleading: Fraud or mistake: Supplemental pleadings: Appeal: Reversal.*

[1. Whether a judgment rendered in form against a defendant who died after service upon him, or appearance, and before the trial, is void or merely voidable, not determined.]

2. Parties who were codefendants in a former action are not con-cluded, as between themselves, by the judgment therein unless there was an issue framed between them covering the point in

question in subsequent litigation, or unless the plaintiff in the former action made a claim against each defendant which negatived the right claimed in the subsequent litigation by one of them against the other.

3. Where no issue was made by the pleadings between two defendants, it may be shown in a subsequent litigation between them upon a different cause of action that the issue in question was not in fact adjudicated in the former action; and proof of the death of one defendant before trial or verdict might show that as to him and his representatives there was no issue tried on notice and hearing, and hence no decision binding his representatives and his codefendant mutually as between themselves.

4. Where one of several defendants died and such part of the cause of action as was averred against the other defendants survived against them, and the cause thereafter proceeded to trial and judgment against such other defendants without bringing in the successor to the rights and liabilities of the deceased party, such judgment, under secs. 2804, 2805, Stats. (1898), did not affect the deceased or his interest in the subject of the action and has no binding force upon his personal representative and heirs in subsequent litigation between them and one of the surviving defendants in the former action.

5. In the absence of evidence to the contrary it will be presumed that the same statutes exist in another state as in this state.

6. Findings of fact not material to the issues in an action are not binding upon the parties in subsequent litigation.

7. In an action to rescind, on the ground of mental incompetency, fraud, and undue influence, a sale of a remainder subject to a life estate, a finding that at the time of the sale neither party thereto knew of the prior death of the life tenant is material and relevant to the issues.

8. Where there is no doubt as to the subject matter, the mere fact that one party has in fact sold more than he thought he was selling, or the other got more than he expected, is not sufficient to avoid the contract of sale; but where there is a mutual mistake as to the subject matter, that condition is sufficient to avoid the contract.

9. Where the subject matter of a sale, and what both parties supposed they were dealing with, was a right in remainder subject to a life estate and subject further to be partially or wholly used for maintenance of the life tenant, but by reason of the prior death of such tenant, then unknown to either party, they were in fact buying and selling an absolute estate or right immediately available in possession and ownership and not subject to diminution, there was a mutual mistake of fact such as

would avoid the contract unless the party seeking relief was negligent in making the contract or acquiesced therein after learning of the mistake.

10. The facts stated in the complaint must show a case of fraud and mistake, or fraud or mistake, in order to entitle plaintiff to relief upon either ground which the evidence may establish.

11. A party asking rescission or cancellation of a contract must bring forward all his grounds therefor in one suit, and cannot have his right or claim tried by piecemeal.

12. Under some circumstances a court will, of its own motion, direct a supplemental complaint to be filed if the justice of the case requires it.

13. It is not the findings of the court which conclude the parties in subsequent litigation, but the judgment entered thereon.

14. In an action to rescind a contract on the ground of fraud the findings negatived the fraud, but a further material and relevant finding clearly established a mutual mistake of fact such as, if properly pleaded, would have entitled plaintiff to relief in the absence of negligence or acquiescence. *Held*, that a judgment for defendant on such findings would, if allowed to stand, be an adjudication that, notwithstanding such mistake, the contract is valid and binding upon the parties.

15. In such case, the findings being supported by the evidence, the supreme court reverses the judgment and remands the cause for trial, upon supplemental complaint and answer, of the questions relating to negligence in making the contract or acquiescence therein after discovery of the mistake.

APPEAL from a judgment of the circuit court for Rock county: E. RAY STEVENS, Judge. *Reversed.*

The appeal is from a judgment rendered in a suit in equity brought to rescind an instrument of assignment and recover an amount collected thereunder.

The cause was first argued on October 23, 1908.

For the appellants there were briefs by *Whitehead & Matheson,* and oral argument by *A. E. Matheson.*

For the respondent there was a brief by *E. D. McGowan* and *Burr W. Jones,* and oral argument by *Mr. McGowan.*

A reargument having been ordered on November 10, 1908, the cause was, on January 9, 1909, submitted for the appellants on a brief by *Whitehead & Matheson,* and for the respondent on a brief by *E. D. McGowan* and *Burr W. Jones.*

The following opinion was filed February 16, 1909:

Timlin, J.   This case presents several unusual and inter-
esting complications.   The plaintiffs, as administrator and
heirs at law of Andrew Roberts, deceased, upon a complaint
averring mental incompetency on the part of the deceased and
fraud and undue influence on the part of the defendant,
brought this suit to rescind the contract of sale hereinafter de-
scribed and recover moneys received by the defendant under
such contract.   There was no express averment of mistake.
The defendant answered denying the incompetency, undue in-
fluence, and fraud, admitting and relying upon the execution
by the deceased to defendant of an assignment of the inter-
est of the former in the residue and remainder of the estate
of one Thomas S. Roberts, and pleaded a judgment of the su-
preme court for Jefferson county, New York, in an action to
construe the will of Thomas S. Roberts brought by the execu-
tor of the latter, and in which the defendant in this action and
Andrew Roberts and others were parties defendant, wherein
·it was found and adjudged that the assignment in question
was valid and that the defendant *Mayhew* thereby became
and was the owner of all the interest of Andrew Roberts un-
der the will of Thomas S. Roberts.   This judgment was duly
proven, but in the proof it appeared that the action was be-
gun February 11, 1904, findings were made therein on Oc-
tober 22, 1904, and judgment entered April 10, 1905.   It
also appeared that there was no issue pleaded or tried be-
tween the defendants therein, Andrew Roberts and *W. A.
Mayhew,* and it otherwise appeared that Andrew Roberts
died on June 19, 1904, during the pendency of the action in
New York, and that the action was not, prior to judgment,
revived against his administrator.

There is an irreconcilable conflict of authority upon the
question whether a judgment rendered in form against a de-
fendant who died after service upon him, or appearance, and

before the trial, is void or merely voidable. *Kager v. Vickery,* 61 Kan. 342, 59 Pac. 628, 49 L. R. A. 153–175, and cases in note. See, also, *La Pointe v. O'Malley,* 47 Wis. 332, 2 N. W. 632, and cases cited. We do not find it necessary to determine this question because it is not involved in the instant case. We are not considering the effect of the judgment as between the executor of the estate of Thomas S. Roberts and the plaintiff and defendant in this cause, but the effect of that judgment as an estoppel between the plaintiffs in this case, claiming under Andrew Roberts, and *W. A. Mayhew,* codefendant of Andrew Roberts in the New York action. In a subsequent litigation between themselves, parties who were codefendants in a former action are not concluded by the judgment in such former action, unless there was an issue framed between such codefendants covering the point in question, or unless the plaintiff in the former action made a claim against each defendant which negatived in effect the right thereafter claimed by the other against his codefendant, as in *Giblin v. North Wis. L. Co.* 131 Wis. 261, 111 N. W. 499; *Strong v. Hooe,* 41 Wis. 659; or in *Devin v. Ottumwa,* 53 Iowa, 461, 5 N. W. 552. See 2 Black, Judgments, § 599 and cases. But in case there is no issue made by the pleadings between the two defendants, then in a subsequent litigation upon a different cause of action it might be shown that the issue in question was not in fact adjudicated. *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589. Proof of the death of one before trial or verdict might serve to show that as to him and his representatives in this situation there was no issue tried upon notice and hearing, and consequently no decision binding his representatives and his codefendant mutually as between themselves. *Grunert v. Spalding, supra.* Our statutes, however, provide for such cases.

"Where there are several plaintiffs or defendants in any action, if any of them shall die and the cause of action survives to or against the others the action may proceed, without

interruption, in favor of or against the survivors. If all the plaintiffs or defendants shall die before judgment the action may be prosecuted or defended by the executor or administrator of the last surviving plaintiff or defendant, as the case may be." Sec. 2804, Stats. (1898).

This part of the section relates to joint rights of action and joint liabilities, and there is also found later in the same section provisions regarding joint and several liabilities. Sec. 2805, Stats. (1898), which covers all other cases of this kind not included in sec. 2804, provides that:

"In case of the death of any of several plaintiffs or defendants, if part only of the cause of action or part or some of two or more distinct causes of action survives to or against the others the action may proceed without bringing in the successor to the rights or liabilities of the deceased party, and the judgment shall not affect him or his interest in the subject of the action."

If we may accept the notes to these sections as evidence, the same statutes exist in New York; but in any event we are authorized to presume they do. *Slaughter v. Bernards,* 88 Wis. 111, 59 N. W. 576; *Rape v. Heaton,* 9 Wis. 328; *Walsh v. Dart,* 12 Wis. 635; *MacCarthy v. Whitcomb,* 110 Wis. 113, 85 N. W. 707, and cases in opinion; *Hyde v. German Nat. Bank,* 115 Wis. 170, 91 N. W. 230; *Edleman v. Edleman,* 125 Wis. 270, 104 N. W. 56. The action in New York was within the words of the statute last quoted; that is to say, one of several defendants died, and such part of the cause of action as was averred against the other defendants survived against them, and consequently the judgment did not affect the deceased or his interest in the subject of the action. *Judson v. Love,* 35 Cal. 463. The judgment has therefore no binding force upon the parties litigant in this action.

Notwithstanding this case was quite close in that respect, the trial court found in favor of the defendant upon the questions of fraud, undue influence, and want of capacity, and under the rule of *Momsen v. Plankinton,* 96 Wis. 166, 71 N. W.

98, and similar cases, we do not feel justified in disturbing such findings. But the findings and undisputed evidence in this situation of the record present the following facts:

On January 9, 1900, Thomas S. Roberts died testate in the state of New York, leaving one third of the residue of his estate to his brother Andrew Roberts, a resident of Wisconsin, subject, however, with the other two thirds of such residue, to the life use of the same by the widow of Thomas S. Roberts, who had also the right to use so much of the corpus of this residue as might be necessary to properly care for and maintain her. The value of this residue of the estate left by said Thomas S. Roberts was about $8,800, and at the time of his death his widow was about sixty-five years of age and in good health. Under the will of Thomas S. Roberts another third of this $8,800 subject to the life estate of his widow as aforesaid passed to a brother, Eliakim Roberts, but the latter died testate April 12, 1901. Under his will there came to Andrew Roberts certain moneys not necessary to mention here in detail, but which were collected for Andrew Roberts by the defendant, *Mayhew*. In addition to these moneys so collected, there came to Andrew Roberts through the will of Eliakim Roberts, but from the estate of Thomas S. Roberts, a further interest in said residue or remainder of $8,800, amounting to about $600. December 22, 1903, Andrew Roberts assigned his interest in the estate of Thomas S. Roberts and in the estate of Eliakim Roberts to the defendant, *Mayhew,* in consideration of $400, of which $100 was paid in cash and the remainder by a note for $300 bearing four per cent. interest. At the time of such assignment Andrew Roberts was eighty-four years of age, a sufferer from palsy, unable to write, addicted to the use of tobacco and intoxicating liquors, at times to excess, but possessed mental capacity to transact business. By virtue of this assignment the defendant received about June 30, 1905, the sum of $2,558.46, and on January 13, 1906, $587.58. The circuit court, among

his findings negativing fraud and undue influence and lack of capacity, found as a fact:

"(5) That at the time such assignment was made neither the deceased nor the defendant knew of the death of the widow of said Thomas S. Roberts, which had occurred on August 27, 1903."

Findings of fact not material to the issues in an action are not binding upon the parties in subsequent litigation. *Lathrop v. Knapp,* 37 Wis. 307; *People ex rel. Reilly v. Johnson,* 38 N. Y. 63. But this finding was relevant to the issues of fraud, undue influence, and lack of capacity, made by the pleadings; for if the defendant, *Mayhew,* knew of the prior death of the life tenant and that he was buying an absolute present vested title for a small sum, instead of a remainder subject to a life estate of uncertain duration and contingent in amount although not in title, but concealed this knowledge from the old man, this would be strong proof of fraud. It would be a fact relevant to and which might alone support the charge of fraud or that of undue influence. Indeed, the learned circuit judge in his written opinion suggests that the determination of the case by him might have been different had this fact appeared. On the other hand, had it appeared that Andrew Roberts knew that he was selling, not a remainder, contingent in amount, which he might never live to enjoy, but a present vested estate of the value of about $3,000, for $100 in cash and a note of $300, that fact would be relevant upon the question of his mental capacity to manage his business and make contracts, as well as upon the question of undue influence. It would also be relevant upon the question of fraud, not as establishing, but as tending to negative, fraud on the part of *Mayhew.* So that the fifth finding above quoted is one relevant to the issues made by the pleadings and an important part of such issues, although not the ultimate issuable conclusion of fact set forth in the complaint. It was a fact proper to be determined and

relevant to the issues, and the quoted finding establishes that it was in fact adjudicated. *Last Chance M. Co. v. Tyler M. Co.* 157 U. S. 683, 15 Sup. Ct. 733; *Grunert v. Spalding,* 104 Wis. 193, 214, 80 N. W. 589; *Wentworth v. Racine Co.* 99 Wis. 26, 74 N. W. 551; *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1. This brings us to the legal effect of the fifth finding.

In *Scott v. Coulson,* [1903] 1 Ch. 453, a contract for the sale of a policy of life insurance was entered into by both parties in the belief that the assured was alive. The assured was at the time dead. The contract was completed by assignment. It was held that the vendors were entitled to have the contract set aside. In the opinion in this case there is cited the familiar case of *Smith v. Hughes,* L. R. 6 Q. B. 597, 611, also *Colyer v. Clay,* 7 Beav. 188, and *Cochrane v. Willis,* L. R. 1 Ch. (App. Cas.) 58. In the last-mentioned case an agreement was entered into by a tenant in tail on the assumption that the tenant for life was alive, when in fact he was dead, and KNIGHT BRUCE, L. J., said:

"It would be contrary to all the rules of equity and common law to give effect to such an agreement or to hold that a person ought to be bound by it."

In *Colyer v. Clay, supra,* a testator by his will dated in 1809 gave to trustees the sum of £2,000 to be invested in funds and held in trust for his wife for life, and after her decease the trustee to pay the said sum and dividends unto his nephew John W. Warren and his nephew John Wilson, share and share alike, in case they should be then alive; but if either of his said nephews should be then dead, then to the survivor of them. After the death of the testator and apparently during the life of his widow, and in June, 1813, John Wilson granted to the plaintiff, Colyer, a certain annuity, and assigned all his reversionary or expectant interest in this £2,000 for the purpose of securing the annuity, and later entered into a contract in writing to sell all his present and fu-

ture interest and title in and to said sum of £2,000 to the plaintiff. At the time this writing was made, the other nephew, John W. Warren, was dead, but the fact was unknown to the nephew Wilson and to the plaintiff, Colyer, and of course by that death Wilson became entitled not only to one half of the £2,000 contingent upon his surviving Warren, but to an absolute vested title in remainder subject to the life interest of the testator's widow. It was held that by reason of the mutual mistake of the parties the contract could not stand.

The same ruling was made with reference to a contract for the purchase of an annuity, neither party having knowledge at the time of making the contract that the annuitant was dead. *Strickland v. Turner,* 7 Exch. 208. Also where a policy of life insurance was surrendered for a paid-up policy for a smaller sum by the beneficiary without knowledge of either party that the insured was dead. *Riegel v. Am. L. Ins. Co.* 140 Pa. St. 193, 21 Atl. 392, 11 L. R. A. 857; *S. C.* 153 Pa. St. 134, 25 Atl. 1070, 19 L. R. A. 166.

In *Hurd v. Hall,* 12 Wis. 112, the plaintiff purchased from the defendant the right, title, and interest of the latter in a certain certificate of sale issued by the commissioners of school and university lands which conveyed no title or interest to the defendant, and it appeared to the court that both parties were mistaken with reference to the ownership or interest of the defendant in the lands in question, and that there was such a mistake or ignorance of fact which authorized a rescission of the contract.

In *Kowalke v. Milwaukee E. R. & L. Co.* 103 Wis. 472, 79 N. W. 762, the nature and character of the mistake of fact which relieves from a contract is discussed and many illustrative cases cited. In that case the plaintiff, having suffered a personal injury caused by defendant, had executed a release of damages to the defendant which she sought to set aside. It was not a case of mutual mistake of fact, but some of the discussion there found and some of the cases and illustrations

given are pertinent. The definition found in Pom. Eq. Jur. § 839, is approved, and it is also said that the fact must have been not merely material in the sense that it might have had weight, if known, but that its existence or nonexistence was intrinsic to the transaction—one of the things actually contracted about. And the following from Kerr on Fraud and Mistake is cited with approval:

"Care must be taken in distinguishing cases where the parties are under a mutual mistake as to the subject matter of a contract from cases where there is no doubt as to the subject matter, but the one has in fact sold more than he thought he was selling, and the other got more than he expected." Kerr, Fraud & M. 433.

Where there is no doubt as to the subject matter, the mere fact that one has in fact sold more than he thought he was selling, or the other got more than he expected, is not sufficient to avoid a contract; but where there is a mutual mistake as to the subject matter, that condition is sufficient to avoid the contract. In the instant case the subject matter of the purchase by *Mayhew* and the sale by Roberts was a right in remainder subject to the life of the widow and subject to be partially or wholly dissipated by reason of the necessities of the life tenant. It was analogous to a contingent remainder of one third of the estate. This was the subject matter of the contract and was what both parties to the contract believed they were dealing with; but by reason of the prior death of the widow they were in fact buying and selling an absolute estate or right immediately available in possession and ownership and not subject to further diminution or depletion. There was consequently a mutual mistake of fact as to the subject matter of the sale, and also, as in all such cases, one bought more than he expected and the other sold more than he thought he was selling. This court was therefore, upon the consideration of the case, confronted with this condition, namely: If the judgment affirmed by this court would affirm the validity of

the sale and conveyance as against this mutual mistake plainly
set forth in the findings without any mitigating circum-
stances, we must refuse to approve of that judgment.   On the
other hand, if the judgment affirmed by this court upon these
findings would be conclusive only against the right of the
plaintiffs to set aside the assignment in question for lack of
capacity, undue influence, or fraud, we might then affirm the
judgment; but this course would enable the plaintiffs to im-
mediately proceed upon the record in this case and have the
assignment vacated on the ground of mutual mistake, unless
that could be obviated by some affirmative defense, such as
negligence on the part of Andrew Roberts.   In this condi-
tion of the record reargument was ordered upon the follow-
ing question: "Whether the mutual mistake of fact with ref-
erence to the continuance of the life of the widow of Thomas
S. Roberts was sufficient to avoid the assignment of Decem-
ber 22, 1903."

Counsel evidently did not understand the situation, because
the plaintiffs present that their action is based upon allega-
tions of fraud and not upon a mutual mistake of fact, and
the defendant also seems to think that an amendment of the
complaint would be necessary and to favor an affirmance of
the present judgment.   Neither counsel gives us any aid upon
the condition here appearing, viz., in a suit for cancellation
and rescission for fraud, findings negativing the fraud but
clearly establishing a mutual mistake.   There is some uncer-
tainty in the rules of equity relative to pleading fraud and
mistake.   Upon a bill filed for relief on the ground of fraud
relief may be granted on the ground of mistake.   *Read's
Adm'rs v. Cramer,* 2 N. J. Eq. 277.   Where an answer
averred fraud, relief was given on the ground of mistake.
*Berryman v. Graham,* 21 N. J. Eq. 370.   On a bill filed on
the ground of fraud, relief was granted based on mistake; but
the averments of this bill were quite general.   *Daniel v.
Mitchell,* 1 Story, 172, Fed. Cas. No. 3,562.   A distinction

must be observed between suits for reformation and suits for cancellation or rescission of a contract. In the former suits there must be shown not a mere mistake on one side, but a mutual mistake, or what is equivalent in the law to a mutual mistake, and, in addition, an enforceable contract of the tenor and terms sought to be established by the suit for reformation. On the other hand, cancellation or rescission proceeds upon the ground that there was no contract between the parties by reason of the mistake or fraud. Relief on evidence showing mistake may be had under a bill the gravamen of which is fraudulent representation and undue influence and which does not by name denominate the transaction as being one produced by mistake. *Powell v. Plant* (Miss.) 23 South. 399.

In *Kyle v. Fehley,* 81 Wis. 67, 51 N. W. 257, the counterclaim charged false representations and fraud. The trial court found there was a mistake in drafting the deed by omitting to state therein that the same was made and accepted subject to a certain lease, and that the defendant was induced to consent to this omission by advice of the plaintiff's attorney and in the belief of the correctness of the statement of the latter as to the legal effect of such omission. The judgment was affirmed in this court.

There is also the familiar case of mistake on one side and knowledge of the mistake on the other, and taking advantage of it, which is always sufficient for rescission or cancellation and sometimes for reformation, provided there is another existing contract which may be substituted. *Clark v. Clark,* 55 N. J. Eq. 814, 42 Atl. 98; *Venable v. Burton,* 129 Ga. 537, 59 S. E. 253; *Haviland v. Willets,* 141 N. Y. 35, 35 N. E. 958. But the correct rule, and that supported by the weight of authority, is that the facts pleaded must show a case of fraud and mistake, or fraud or mistake, in the complaint in order to entitle the complainant to relief upon either ground which the evidence may establish. *Clemens v. Clemens,* 28 Wis. 637; *Leighton v. Grant,* 20 Minn. 345; *Daniel v.*

*Mitchell,* 1 Story, 172, Fed. Cas. No. 3,562; *Stebbins v. Eddy,* 4 Mason, 414, Fed. Cas. No. 13,342; *Smith v. Babcock,* 2 Woodb. & M. 246, Fed. Cas. No. 13,009; *White v. Denman,* 1 Ohio St. 110; *Williams v. Sturdevant,* 27 Ala. 598.

In the case at bar we are, by reason of the fifth finding above quoted, confronted with the question whether the judgment of the court below denying rescission or cancellation can be upheld in the presence of that finding. If this finding, being relevant to the issues made by the pleadings and actually passed upon and adjudicated, is conclusive in a subsequent litigation between the same parties relative to the same subject matter, the effect must be to enable the plaintiffs upon the termination of the present action to begin an action for rescission on the ground of mutual mistake and to conclude the defendant by this fifth finding upon that question, or else the result must be to adjudge that, notwithstanding the mutual mistake found and presented to us by the finding, the judgment rendered upon such findings asserting the validity of the contract in question is conclusive that such facts established by the fifth finding are insufficient to invalidate the contract of sale. The case therefore discloses a relation between fraud and mistake not often apparent. Kerr, Fraud & M. (3d Eng. ed.) 434, 440; *Gumpel v. Castagnetto,* 97 Cal. 15, 31 Pac. 898. It also discloses an effect of the statute requiring findings of fact which perhaps has not before been fully foreseen. But would the affirmance of this judgment have the effect, while concluding the parties upon the fact that there was a mutual mistake, also to conclude them upon the legal conclusion resting upon this fact and established by the judgment, that the assignment was valid notwithstanding this mutual mistake of fact? Manifestly different answers might be given to this, depending upon what, in such case, is considered the plaintiff's cause of action. Beginning with the relief sought, and analyzing and separating next into forms of

action, and again into particular averments relative to the case in hand, it is obvious that the further we proceed in this separation and classification the more we narrow the conclusive effect of judgments and impair their efficacy as a means of settling litigated or controverted questions or titles.

In *Wildman v. Wildman,* 70 Conn. 700, 41 Atl. 1, the plaintiff brought an action to have certain deeds executed and delivered by him to the defendant canceled and adjudged void on the grounds that the deeds were given without consideration and not for the purpose of conveying title, but for the purpose of preventing plaintiff's wife from obtaining dower in the event of his death.   It appeared that he had brought a prior action for the purpose of having the same deeds canceled and adjudged void on the ground that they had not been delivered to the defendant.   It was ruled that from the viewpoint of *res adjudicata* the cause of action asserted in each complaint was the plaintiff's right to cancel the deeds in the first case upon one ground and in the second case upon a different ground, and the court said:

"The rule of *res judicata* does not rest wholly on the narrow ground of a technical estoppel, nor on the presumption that the former judgment was right and just; but on the broad ground of public policy, that requires a limit to litigation, a curb on the litigiousness of the obstinate litigant.   Like the statute of limitations, it is a rule of rest.   As expressed by Judge Pardee in *Supples v. Cannon,* 44 Conn. 424, 428: 'The policy of the law is that, if a claim has once been passed upon by a court of competent jurisdiction, it shall not thereafter be controverted between the same parties, and this in the interest of peace.' . . . Every action is brought in order to obtain some particular result which is termed the remedy.   This final result is not the 'cause of the action;' it is rather the 'object of the action.'   Every judicial action has in it certain necessary elements—a primary right belonging to the plaintiff, and a corresponding primary duty devolving upon the defendant, a delict or wrong done by the defendant, which consisted in a breach of such primary right and duty, a remedial right in favor of the plaintiff, and a remedial duty

resting upon the defendant springing out of this delict, and,. finally, the remedy or relief itself. Every action, however simple, must contain these essential elements; and, however complicated, it has no more. Of these elements, the primary right and duty and the delict or wrong constitute the cause of action."

It was ruled in this case that, although the facts upon which relief was sought were different, the cause of action was the same and was barred by the decision refusing to cancel this deed in the former suit on the ground that it was never delivered. Similar language may be found in *Herman v. Felthousen,* 114 Wis. 423, 90 N. W. 432, and cases there referred to.

So in *Hoseason v. Keegen,* 178 Mass. 247, 59 N. E. 627, a: suit in equity to set aside a conveyance of real estate on the ground of lack of consideration, undue influence, and persuasion was held barred by the former adjudication in favor of the defendant upon a bill to set aside the same deed on the ground of fraud. Holmes, C. J., said:

"The object and petitory conclusions of both suits are the same: to annul the effects of the same deed by a reconveyance. *Gillespie v. Russel,* 3 Macq. 757, 760. It is true that the ground on which the recovery now is sought differs somewhat from that formerly alleged; but so far as appears, both bills go on generically the same footing, that Mary McLaughlin was given an improperly created motive for action by the defendant, and differ only as to what the motive was." *Barnes v. Huntley,* 188 Mass. 274, 74 N. E. 318.

In *Shepardson v. Cary,* 29 Wis. 34, an action was brought to' enforce an equitable lien upon certain property after a judgment had been rendered against the plaintiff in an action at law against the same defendant for conversion of the same property on the ground that plaintiff had shown no title to the property against the defendants. The court held the former judgment a bar. It is 'said:

"The remedy at law, therefore, founded on the legal title or right, is equivalent to that given in equity, founded on an

equitable title or lien. It is in every case coextensive and concurrent with the remedy in equity, and, being so, it would seem necessarily to follow that the judgment in an action at law would bar and estop the party subsequently resorting to his suit in equity upon the same subject or ground of action, and *vice versa.*"

Upon the premises assumed by the court the foregoing quoted paragraph would be a correct conclusion of law, otherwise not. *Wis. F. & M. Ins. Co. Bank v. Mann,* 100 Wis. 596, 76 N. W. 777.

In *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1, where the subject received great consideration, it was decided that a judgment is conclusive between the parties thereto and their privies in a second action on the same claim or cause of action as to all questions that were or might have been litigated in the first action, and is likewise conclusive in a second action upon a different claim or cause of action as to every proposition within the issues in the first or former action which was presented for adjudication and decided.

Another rule of law requires a party to bring forward in one suit all his grounds for rescission or cancellation and forbids the trial of such a right or claim by piecemeal. *Stark v. Starr,* 94 U. S. 477; *Bendernagle v. Cocks,* 19 Wend. 207, 32 Am. Dec. 448; 2 Black, Judgments, § 734; *Caston v. Perry,* 1 Bailey, 533, 21 Am. Dec. 482; *Dodd v. Scott,* 81 Iowa, 319, 46 N. W. 1057, 10 L. R. A. 360; *Dowell v. Applegate,* 152 U. S. 327, 14 Sup. Ct. 611; *Thompson v. Myrick,* 24 Minn. 4.

With reference to the effect of the judgment appealed from in the instant case, we are convinced that its legal effect, if allowed to stand, is to adjudicate that, notwithstanding the mutual mistake presented by the fifth finding, the contract entered into under such mistake is valid and binding upon the parties, because it is not the findings but the judgment which constitutes the former adjudication. *Denike v. Denike,* 44 App. Div. 621, 60 N. Y. Supp. 110; *Whitney v. Bayer,*

101 Mich. 151, 59 N. W. 414; *Rauwolf v. Glass,* 184 Pa. St. 237, 39 Atl. 79; 2 Black, Judgments, §§ 609, 621; *Wolf River L. Co. v. Brown,* 88 Wis. 638, 60 N. W. 996. Thus we would be called upon to pronounce a judgment upon certain facts which do not in the law warrant such a judgment. The case, however, has been fully tried upon the issues of fraud, incapacity, and undue influence. We therefore permit all the findings to stand as they now are. *Braunsdorf v. Fellner,* 76 Wis. 1, 45 N. W. 97. Mutual mistake of the kind and under the circumstances established here will avoid a contract, unless there has been negligence in making the contract by the party seeking relief or there has been acquiescence in the contract with knowledge of the mistake. What facts will be sufficient to warrant the inference of such negligence or such acquiescence in this class of cases may be found discussed in the adjudged cases. Our statute (sec. 2687, Stats. 1898) provides for supplemental pleadings by the parties, limiting them to facts occurring or discovered since the former pleading. This statute is adapted from the former equity practice, and a supplemental bill could be filed at any time during the progress of the cause, even after a hearing or decree. *Baker v. Whiting,* 1 Story, 218, 233, Fed. Cas. No. 786; *Goodwin v. Goodwin,* 3 Atk. 370; *Dodge v. Dodge,* 29 N. H. 177. But it was also settled that a court would under some circumstances *ex mero motu* direct a supplemental bill to be filed if the justice of the case in the opinion of the court required this to be done. *Mutter v. Chauvel,* 5 Russ. 42; *Wood v. Mann,* 2 Sumn. 316, Fed. Cas. No. 17,953; *Veazie v. Williams,* 3 Story, 54, 67, Fed. Cas. No. 16,906.

Because we are unwilling to affirm the judgment in favor of the defendant or to order judgment in favor of the plaintiffs upon the facts found and presented to us by the court below and at the same time consider the facts so found to be supported by evidence, it seems best to reverse the judgment of the court below and to remand the cause for trial, upon

supplemental complaint and answer, of the questions relating to negligence, if any, of Andrew Roberts in entering into this contract, and the acquiescence, if any, of Andrew Roberts or the plaintiffs in the contract after discovery of the mutual mistake.

*By the Court.*—The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

A motion for a rehearing was denied March 30, 1909.