ANDERSON, Appellant, vs. OSCEOLA MILL & ELEVATOR COM-
PANY, Respondent.

*April 30—October 7, 1913.*

*Judgment:* Res judicata: *Issues: Matters determined: Partnership:
Fraud.*

Causes of action in favor of a partnership and against a corpora-
tion for sums of money and other partnership assets received
by the company through the fraudulent appropriation thereof,
by one of the partners and the company's agents, to the pay-
ment of the company's claims against said partner individ-
ually, are *held* not to have been included in the issues or cov-
ered by the judgment in a former action brought by the cor-
poration against the partnership, involving an account for
goods sold and cash advanced to the firm and payments made
thereon.

APPEAL from a judgment of the circuit court for Polk
county: FRANK A. ROSS, Circuit Judge. *Reversed.*

This is an action by the plaintiff, as assignee, to recover
the assets of a former partnership between himself and one
Solomonson. The plaintiff alleges that the defendant,
through the fraudulent conduct of its agents and his former
partner, procured and obtained possession of the partnership
property. The trial court awarded judgment dismissing
plaintiff's complaint and for costs. This is an appeal from
such judgment.

For the appellant there was a brief by *Kennedy & Yates,*
and oral argument by *W. T. Kennedy.*

For the respondent there was a brief by *McNally & Doar,*
and oral argument by *W. F. McNally.*

The following opinion was filed May 31, 1913:

SIEBECKER, J. From June 6, 1906, until September 19,
1909, the plaintiff and one E. S. Solomonson were partners
and as such partners conducted the business of a country store

at Nye, Wisconsin. The plaintiff was absent from the state most of this time and Solomonson had charge of the business. During this time Solomonson was, individually, the agent for the defendant, the *Osceola Mill & Elevator Company*—hereinafter called the *Mill Company*—and as such agent had charge of defendant's business and elevator at Nye. The defendant furnished Solomonson the money, from time to time, for carrying on its business of buying grain. In January, 1909, Solomonson was in arrears in his accounts as defendant's agent, and to make good this shortage he issued two checks of the firm of Solomonson & Anderson of $500 each to be applied on his individual liability to the *Mill Company*. The plaintiff, *Anderson,* did not know of the issuance of these checks by Solomonson and did not have any knowledge thereof until the firm had become insolvent and after a trust deed of its property had been made by Solomonson while *Anderson* was out of the state. The *Mill Company* had knowledge of the fact that these were firm checks and that they were paid from partnership funds.

On or about the 30th day of July, 1909, Solomonson again was in default in his accounts with the defendant *Mill Company,* and he again issued two checks of Solomonson & Anderson for $500 each to the *Mill Company* to apply in payment of his individual liability, without the knowledge of *Anderson;* but the *Mill Company's* representative knew that these checks were paid from partnership funds. It also appears that on or about the 6th day of September, 1909, the *Mill Company,* with Solomonson's consent, took possession of the store and partnership business and collected accounts and notes due to the firm to the amount of $767.99. The plaintiff knew nothing of these transactions at the time. Solomonson had also cashed grain checks for farmers with the firm's money, amounting to $1,492.25, without either the defendant's or the plaintiff's knowledge.

On or about the 28th day of September, 1909, the firm of

Solomonson & Anderson was, and has since continued to be, insolvent. At this time its property was transferred by trust deed for the benefit of its creditors. Solomonson was, at this time, also insolvent.

In October, 1909, Solomonson assigned all of his interest in and to the partnership assets to the plaintiff. On the 8th day of December, 1909, the trustee of the firm property assigned to the plaintiff the book accounts, claims, and causes of action belonging to the firm. The plaintiff before the commencement of this action paid all of the indebtedness of the said firm, amounting to $5,000.

On the 24th day of November, 1909, the *Mill Company* commenced an action in the Polk county circuit court against the firm of Solomonson & Anderson to recover an alleged balance due it for goods, wares, and merchandise sold and delivered to the firm of the alleged value of $3,868.33 and for cash advanced to the firm amounting to $133.12, and for moneys of the plaintiff which it alleged had been used by the defendants in their partnership business, the amount whereof it could not then state, and demanded judgment for $1,408.74. In that action the defendants admitted having purchased of plaintiff goods, wares, and merchandise of the nature stated, but denied the amount thereof as stated in the *Mill Company's* complaint, and alleged that the goods purchased had been fully paid for. The defendants also denied that they had taken or appropriated any of the *Mill Company's* money or mingled any of it with the moneys of the firm. The defendants further denied that the firm acted as the agent in any manner for the *Mill Company* in conducting its business at Nye.

The issues raised by the pleadings did not present the questions as to what amounts Solomonson was in default to the *Mill Company* nor as to what amount of the partnership funds the *Mill Company* had received from him through the fraudulent appropriation thereof by Solomonson and the com-

pany's agents for the purpose of covering Solomonson's de-
faults.    The referee in the action found that Solomonson was
the *Mill Company's* agent at Nye; that the copartnership
was not the company's agent, and that the firm did not ap-
propriate or receive any of the *Mill Company's* moneys or
property nor mingle its funds with that of the partnership;
that the *Mill Company* wrongfully attempted to charge Solo-
monson's shortage to the copartnership, and that a large
amount of the partnership notes and assets which had come into
the *Mill Company's* possession prior to and at the time the part-
nership failed in 1909 had not been credited to the copartner-
ship account.    The referee also found the correct amount of
the *Mill Company's* total claim for goods and merchandise
sold and delivered by it to the firm of Solomonson & Ander-
son and the payments the firm had made thereon.    In addi-
tion to the foregoing the referee also reported some findings
on the evidence adduced, stating the amounts of partnership
notes and checks of the firm which the *Mill Company* had
received and not credited to any account of the copartnership,
but had attempted to credit and apply them in satisfaction
of its claim against Solomonson in his individual capacity
under their contract of agency with him; and that its agents
had obtained these with the knowledge that they were funds
belonging to the firm of Solomonson & Anderson and that
*Anderson* had no knowledge thereof nor assented or approved
the same, and that its agents were informed that Solomon-
son and the firm of Solomonson & Anderson were then in-
solvent.    The circuit court upon motion of the parties, after
argument, modified this report of the referee by striking out
as surplusage the findings of the referee pertaining to the ap-
propriation by the *Mill Company* of the moneys and assets
of the firm which were thus obtained through the wrongful
conduct of Solomonson and the company's agents for the pur-
pose of paying Solomonson's individual liability as their de-
faulting agent; and approved by its judgment only such items

of money or proceeds of notes which were received by the *Mill Company* in payment of the account against the firm for goods, wares, and merchandise bought from the company, and found as to the items thus credited to the copartnership and covered by the findings thus approved that: "The total amount for which the said firm should be credited greatly exceeds the proper charges," and therefore made the following direction: "Wherefore it is further ordered that defendant have judgment that plaintiff has no cause of action and for this [their] costs and disbursements." Judgment was accordingly entered dismissing plaintiff's complaint and for costs.

In the instant action the court again found all the essential facts in accord with the foregoing showing the relationship of the partners; the insolvency of Solomonson and of the firm in September, 1909; Solomonson's defaults in account with the *Mill Company* as its agent at Nye and the payment, by checks and otherwise, of his individual liability to the *Mill Company* out of the funds and assets of the firm without the knowledge, consent, or approval of *Anderson,* and that the *Mill Company's* agents had knowledge that these firm funds and assets were so applied without *Anderson's* knowledge. The court also found that the plaintiff in the instant action (*Anderson*) and his copartner, Solomonson, had in their answer in the former action, wherein the *Mill Company* was plaintiff and Solomonson and *Anderson,* as copartners, were defendants, alleged the same matter as a defense which *Anderson* alleges in his complaint as his cause of action, and that evidence thereof was adduced and the rights of the parties in respect thereto were litigated, and that the plaintiff participated in the active litigation of said action, and that judgment was rendered therein adjudicating the rights of all parties in respect thereto; and upon these grounds adjudged in this action that such former adjudication estopped the plaintiff in this action from recovering on any of the claims

in his complaint as the assignee of the trustee of the firm property.

The plaintiff assails this finding and conclusion of the trial court upon the ground that the issues in the former action by the *Mill Company* against Solomonson and himself as copartners did not include the causes of action contained in his complaint in the instant action and that they were in no way considered, litigated, or adjudicated therein. An examination of the record of the former case shows that the court's action in striking out the referee's findings to the effect that Solomonson, in collusion with the company's agents, had paid to the company large sums of the firm's money in satisfaction of his individual obligations arising out of his defaults as agent for the *Mill Company,* was manifestly based on the ground that the pleadings in that action presented no issue to determine the questions involved as to Solomonson's agency and his liability under the contract with the *Mill Company.* An examination of the pleadings in that action shows that the ruling was correct. The facts as there found, that the firm had no interest in nor received any benefit from or through such agency business, and that the cause of action alleged was to recover a balance due the *Mill Company* on its account for goods, wares, and merchandise sold and delivered and for money loaned and advanced to the firm, clearly indicate that no accounting of the transaction pertaining to Solomonson's defaults and the fraudulent appropriation of the firm's assets in payment thereof was embraced in the issues of that action. It is obvious that the issues presented only the questions of the amount due on the *Mill Company's* account against the copartnership and whether or not the account was paid. The findings and judgment also clearly indicate that the court so treated the case and adjudicated what was due the *Mill Company* on its account against the copartnership and dismissed the *Mill Company's* complaint with costs, upon the ground that this account was fully paid. True, some evidence show-

ing that Solomonson had paid and delivered to the *Mill Company* large sums of money and other assets of the firm was received; but it also appears that as to them the items embraced and enumerated in the third, fourth, fifth, and sixth findings of fact of the court in the instant case and amounting to $4,260.24 were intended by him and the *Mill Company* to apply as payment of his individual obligation, and thus were not in fact embraced in the credits allowed by the court in the former action on the account of the *Mill Company* as payments. It is manifest from the record in the former case that the *Mill Company's* liabilities to the copartnership of Solomonson & Anderson for these items so obtained by it of the firm property were not assumed to be involved nor litigated or considered in that action. This is clearly indicated by the court's action, acquiesced in by all who were before the court, in striking the referee's findings in relation thereto from the report as surplusage, and awarding judgment regardless of them, dismissing the *Mill Company's* complaint. If the items had been considered to be within the issues and for determination, then the court would not have stricken them from the report as it did, and judgment for recovery thereof upon the report of the referee as made to the court would necessarily have been awarded against the *Mill Company*. This view of the former action makes the firm's position therein merely defensive for the purpose of showing payment, and hence the other matters were immaterial and were properly eliminated by the court by its modification of the referee's report and dismissal of the *Mill Company's* complaint. This conclusion as to the nature of that action excludes all claims that it constituted an accounting and adjustment of all the claims, liabilities, and causes of action between the parties arising out of Solomonson's defaults as agent of the *Mill Company* and out of any misappropriation of the firm's funds by him and the *Mill Company* in payment of his individual liabilities. Whether or not Solomonson is

liable to the *Mill Company* on account of the alleged defaults under his contract of agency was not involved in the litigation nor determined. It therefore appears that recovery from the *Mill Company* of the property of the copartnership it had wrongfully appropriated in payment of its alleged claim against Solomonson was not embraced in the judgment in the former action, and that the claims and demands here involved have never been litigated and determined, nor has satisfaction thereof ever been made. It is elementary that Solomonson's alleged liability to the *Mill Company* was an individual one and that the firm was not liable therefor, and hence the firm's property could not be applied in satisfaction thereof without the consent and approval of *Anderson.*

It is considered that the court erred in holding that the record in the former action shows that the causes of action embraced in the instant action were there adjudicated. Under these circumstances the former judgment does not preclude the plaintiff in this action from enforcing the causes of action alleged in his complaint against the defendant; and upon the facts shown by the evidence he is entitled to recover the amount specified in the third, fourth, fifth, and sixth findings of the court, with interest thereon from the commencement of this action, and his costs. *Moehlenpah v. Mayhew,* 138 Wis. 561, 119 N. W. 826; *Hardy v. Mills,* 35 Wis. 141; *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to award judgment in the plaintiff's favor as indicated in the opinion.

A motion for a rehearing was denied, with $25 costs, on October 7, 1913.